# Mount Moriah Cemetery Association *versus* Commonwealth of Pennsylvania *ex rel.* W. H. Boileau and Margaret Jones.

1. An incorporated cemetery company was authorized to make by-laws, &c., to sell lots in fee simple or otherwise for sepulture alone, under such rules as the managers might ordain for the burial of the dead, &c. The by-laws provided that there should be no burial without a written permit from the secretary, and that all transfers of lots must be registered in the office of the association. Boileau bought a lot, and his deed was registered; he conveyed it to Jones, a colored woman; this deed was not registered. She applied for a permit to bury her husband; the secretary declined, because the lot was registered as Boileau's. Boileau asked for a permit to her to bury her husband in the lot; the managers then directed the secretary to refuse an approval of the transfer to Jones. The secretary refused to issue

[Mount Moriah Cemetery Association *v.* Commonwealth.]

a permit for the burial : *Held,* that Boileau had the right to bury the husband ; that the refusal to issue the permit was arbitrary and unreasonable, and mandamus lay to compel the company to issue the permit.

2. When Boileau purchased, there being no restriction on his right of burial, the company could not afterwards abridge his rights.

3. W. C. & Philadelphia Railroad Co. *v.* Miles, 5 P. F. Smith 209, remarked on.

February 28th 1876.    Before SHARSWOOD, MERCUR, GORDON PAXSON and WOODWARD, JJ.

Error to the Court of Common Pleas of *Philadelphia,* No. 3 : No. 108, to January Term 1873.

This was a mandamus by the Commonwealth of Pennsylvania, on the relation of William H. Boileau and Margaret Jones, against the Mount Moriah Cemetery Association.    The defendants were incorporated by Act of Assembly of March 27th 1855 (Pamph. L. of 1857, p. 729).

The act incorporated a number of persons by name, and authorized them to increase the number of corporators from the lotholders, so that the association should never be less than twenty nor more than one hundred, with power to ordain by-laws, rules and regulations ; to purchase land and lay it out in plats and burial lots ; to erect vaults and buildings, and do all other things necessary to fit " the ground for a cemetery, and to sell and dispose of such lots, in fee simple or otherwise, for the purpose of sepulture to individuals, societies or congregations, without distinction or regard as to sect, under such conditions, rules and regulations as the said corporators or managers may establish for the government of lot-holders, visitors to the cemetery and burial of the dead."

" Every lot in said cemetery shall be held by the proprietor for the purpose of sepulture alone, transferable with the consent of the managers thereof, and shall not be liable to attachment or execution ; and said burial lots, when sold by the company, shall hereafter be for ever exempted from taxation."

The following are by-laws of the company :—

" 6. All graves, post-holes and excavations for vaults and foundations shall be dug by workmen in the employment of the association, for which the most reasonable charges will be made.  No interment shall take place without a written permit from the secretary.

" 7. No right or privilege of burial shall be derived by any compulsory sale or transfer to any purchaser.

" 8. No transfer or sale of lots made by auction will be allowed to take place in the cemetery.    All transfers of lots must be registered in the office of the association.

*        *        *        *        *        *        *

" 10. The remains of no person who died of small-pox or other contagious disease, shall be permitted to be deposited in the receiving vault.   No permit shall be granted to a stranger for the use of the vault, unless the sum of five dollars as the first instalment

on account of a lot, and also the cost of a grave, be first paid by the person so applying."

The petition set out,

1. The act of incorporation.

2. On the 16th of April 1875, the company conveyed to Boileau a lot, No. 48, containing 240 square feet, one-half of section 58, to be used for burial purposes. It was paid for, and the deed duly registered. Appended to the deed to Boileau is a "note," that all transfers of lots, to be valid, must be approved by the secretary and registered, &c.

3. On the same day, Boileau entered into a parol agreement to convey a portion of the said lot to Mrs. Margaret Jones, a colored woman and wife of the late Henry Jones, deceased, which said Margaret Jones joined in this petition, the consideration therefor being the sum of $100, which amount at said date was paid Boileau. At or about said date the lot in question was inspected by the petitioners in the presence of the superintendent and secretary, who drew out the plan of the lot, marked the grave, and interposed no objection whatever to the contemplated transfer of the lot to Margaret Jones.

4. On April 17th 1875, upon the order of Boileau, with the full knowledge and tacit consent of the said corporation, through its authorized officers, the body of one Elizabeth Clark, a colored woman and sister of Margaret Jones, was interred in the said lot, after due public notice given by advertisement in newspapers published in said city, which expressly stated that the remains of the deceased woman would be conveyed to Mount Moriah Cemetery from Bethel Church, which place of worship was well known by the community to be attended solely by colored people.

5. On May 10th 1875, Boileau, by deed in proper form and legally acknowledged, conveyed to Margaret Jones the entire lot herein above referred to, to be used by her for burial purposes, the consideration therefor being $180, which said sum was paid in full by Margaret Jones. The deed in question was forthwith delivered to Margaret Jones, without the formality of approval by the secretary and registration.

6. Boileau omitted to obtain such approval and registration of the said deed before delivery thereof to Margaret Jones, simply because to his knowledge the rule enjoining such approval and registration was in most cases virtually a dead letter and never strictly enforced. This knowledge was based on the fact that your petitioner had disposed to purchasers of more than $50,000 in value of the burial lots of the said corporation, and not one-half of the deeds to the lots so sold were ever approved and registered, although in many instances interments of bodies took place in the lots referred to in such conveyances with the knowledge and full consent of the corporation aforesaid.

[Mount Moriah Cemetery Association *v.* Commonwealth.]

7. The transfer of the said lot to Margaret Jones was made with the full knowledge of H. P. Connell, who was the secretary and superintendent, intrusted with its general management. The previous interment of a colored woman in the lot, and that Margaret Jones was a colored woman, and the prospective uses of the said lot for the interment of the colored members of the family of Margaret Jones, were known to him, and not only was no objection interposed to the conveyance, either by Connell or by the corporation, but at or about the time of the said sale and conveyance to Margaret Jones, Connell expressed to Boileau a regret that the company itself had not made the said transfer to Margaret Jones direct, and a desire that the improving the lot for the use of Margaret Jones should be intrusted to him and another official.

8. After the date of the latter conveyance, Margaret Jones and her late husband, Henry Jones, commenced to adorn and improve the said burial lot, and contracted with Mr. Daniel Connell for the erection of an iron railing which should enclose the lot, attached to marble posts, each conspicuously marked " Henry Jones," which work was completed in the summer, and the sum of $160 paid therefor, Connell's name having been suggested to your petitioner by the officer in charge of the cemetery.

9. Neither of the petitioners were ever notified until September 27th 1875, of any opposition to the approval and registration of the deed to Margaret Jones, nor of any objection to the occupancy of the lot by the members of the family on account of their color.

10. On September 25th 1875, she sent a messenger to the officers in charge of the cemetery, acquainting them with the death of her husband, and of her desire and intention to inter him in the lot on September 27th 1875 ; that the officer in charge of the grounds promised compliance with the request, and that a grave should be dug in the lot in proper time, and received the case which was intended to enclose the coffin of the decedent.

11. Full arrangements were thereupon made for the funeral, advertisements were inserted in the public press, and a large concourse of friends assembled at his house on September 27th 1875, to participate in the religious exercises and to attend the corpse to the grave.

12. About fifteen minutes prior to the time advertised for the funeral, &c., a note, of which the following is a copy, was left at the dwelling of Margaret Jones :—

"Madam :—I am in receipt of a note from you, requesting a grave to be dug in lot No. 48 in Mount Moriah Cemetery. I am unable to comply with your request, because the lot in question is registered as belonging to William H. Boileau, and the rules of the company require me to act only under the orders of the registered owner. Very respectfully,.

H. P. CONNELL, Superintendent."

[Mount Moriah Cemetery Association *v.* Commonwealth.]

13. The note was immediately sent to Boileau, who forthwith endorsed thereon :—

"Philadelphia, Sept. 27th 1875.

" Dear Sir :—Please to let the bearer bury in the lot.

W. H. BOILEAU."

The note so endorsed was at once conveyed to the cemetery, and with the two deeds was handed to the officer in charge, who acknowledged the validity of the order, but asserted that objection having been made by some of the lot-holders to the interment of colored people in the cemetery, he was instructed by the managers not to allow the bodies of colored people to be brought within the grounds.   He further refused to allow the body of the deceased to be temporarily placed in the receiving vault until the petitioner could make other arrangements for its interment.

14. Unaware of this prohibition, upon the conclusion of the religious exercises at the house, the funeral procession traversed its route to the cemetery, when its passage was checked by parties purporting to be sent by the superintendent for the purpose of notifying them of the prohibition.

15. The petitioner therefore was compelled to convey the remains of her husband to the receiving vault of Lebanon Cemetery, where it still remains unburied.

16. On September 29th 1875, demand was made upon James Smyth, the president of the corporation, and upon the said H. P. Connell, secretary thereof, forthwith to approve and register the deed to your petitioner of the lot in question from the said Boileau ; or should that demand be refused, then to acknowledge and execute the order of Boileau for interment, and give permission to bury her late husband in the lot.   To this demand the president has made no reply ; but the secretary and superintendent has answered with a peremptory refusal on the part of the corporation to approve or register the deed to your petitioner, or to honor the order for interment.

17. The prayer was for a mandamus to the Mount Moriah Cemetery Association to accept and carry into execution the order of Boileau, and at once permit the body of Henry Jones to be interred in lot No. 48, &c., or show cause, &c.

An alternative mandamus was issued, returnable October 16th 1875.

The defendants answered that the relators were not entitled to a mandamus, because,

1. They were improperly joined, their interests being several, and the injuries to them, if any, require different remedies.

2. The executor or administrator, &c., of Henry Jones, whose duty it was to pay the expenses of the burial, &c., was not made a party.

[Mount Moriah Cemetery Association *v.* Commonwealth.]

3. The relators had a specific remedy at law other than was prayed for.

4. Because, by Boileau's own deed it appeared that all tranfers of lots, in order to be valid, must be approved by the secretary and properly registered ; and the petition admitted that there was no approval or registration of the deed to Mrs. Jones.

5. The consent of the managers is by the act of incorporation necessary to the transfer of a lot ; and a mandamus will not issue to compel an act not merely ministerial, or control the discretion conferred by the act of incorporation.

6. A mandamus cannot issue to settle a disputed title to a cemetery lot.

They further answered,   *   *   *

3. They denied the allegations of the concluding clauses of the third paragraph of the petition.

4. They averred that the burial of Elizabeth Clark, mentioned in the fourth paragraph, was without the knowledge by the officers of the defendants that she was a colored woman.

5. The execution and delivery of the deed from Boileau to Mrs. Jones was admitted, but it was averred that it was never approved or registered.

6, 7. They denied the allegations in the sixth and seventh paragraphs of the petition.

9. They denied the allegations of the ninth paragraph of the petition, and averred that they had received the following request, signed by a large number of lot-holders, viz. :—

" We, the undersigned owners of lots in Mount Moriah Cemetery, having learned that a person of color has purchased from Mr. William H. Boileau a lot in said cemetery for the purpose of interment, and demands a requisite transfer of the same from the association, do hereby protest against the same, and request that your approval of such transfer be withheld.   We are led to make this request by a knowledge of the prejudice which will be aroused against the cemetery if the precedent of this transfer were established and the consequent depreciation of value of property in this cemetery that would certainly result from such a prejudice."

In pursuance of the request, the managers resolved,

" That we accede to the request of the petitioners, and that the officers be directed to refuse to make such transfer."

Notice of these proceedings was at once given to Boileau, and afterwards he applied for the approval and registration of the deed to Mrs. Jones, and the approval was refused.   No notice was given to Mrs. Jones, because she was not recognised as having any interest in the lot.

10. The notice of the death of Henry Jones and Mrs. Jones's desire to bury him in the lot mentioned in the tenth paragraph of the petition, came to the cemetery on Saturday, September 25th 1875,

between eight and nine o'clock at night, directed to the secretary, the messenger bringing with him a case. The secretary was absent, and the note and case were received by the foreman of the grounds, who was without authority in the matter. The respondents denied that the foreman promised that a grave should be dug. The answer of the secretary referred to in paragraph twelve of the petition was sent on the following Monday.

" 16. * * * We refused to permit a transfer of a lot to a colored person because, as we are advised and believe, our charter gave us full discretion in the matter, and we were informed and believed, and now believe, that so great is the opposition on the part of a large majority of our many thousand lot-holders to the interment of colored persons in the cemetery among their deceased friends and relatives, that, if we were to permit it, it would probably lead to acts of violence and breaches of the peace, large numbers of the dead already interred therein would be removed, as has been expressly threatened in many instances, the association would be financially ruined and compelled to leave the thousands of existing graves to the result of abandonment and neglect, and those who have already paid us their money and obtained rights which it is our duty to protect, would thus be greatly wronged and injured."          *          *          *          *          *          *

" For these considerations we refused to permit the burial of said Henry Jones on the order of said Boileau, which order was an indirect and evasive mode of reaching a result which he had not been able to reach directly, but one which a provision in our sixth by-law and regulation, that 'no interment shall take place without a written permit from the secretary,' enables us to defeat."

The Commonwealth demurred to the return, and set out the following causes of demurrer :—

1, 2. The return did not make known any cause sufficient in law why a peremptory mandamus should not be issued; nor any right in the respondent to refuse to allow and permit the body of Henry Jones to be buried in the lot.

3. It was admitted by said return that William H. Boileau was the owner in fee of the lot of ground in the writ mentioned, for purposes of burial, under a deed from this respondent, to him duly registered, and that his order in writing for the burial of said Henry Jones in said lot was known to the respondent; but the respondent has not shown by said return any right of said respondent to refuse to permit Margaret Jones to bury the body of her late husband, Henry Jones, in accordance with said order.

4. The fact that said Henry Jones was a colored person did not in law justify the respondent in refusing to permit the burial of the body in said lot of ground.

5. The withholding of a special permit for the burial of said

31 P. F. SMITH—16·

[Mount Moriah Cemetery Association *v.* Commonwealth.]

body as stated in said return was illegal, and furnished no justification to the respondent.

6. It was admitted in the return that Willliam H. Boileau executed and delivered a deed to Margaret Jones on May 10th 1875, for the lot of ground mentioned in the writ; and the averment that the deed was not approved by the managers, or registered in the office of the association, was not sufficient in law to defeat the right of Margaret Jones to bury the body of her late husband in the lot by virtue of the said conveyance to her.

7. The respondent had not shown any legal right to refuse to approve and register said deed to Margaret Jones.

The Court of Common Pleas, No. 3, Ludlow, P. J., delivered the following opinion :—

*   *   *   " The relators have, or one of them, by the act of the defendants, a fee simple in the lot. Undoubtedly the ground thus held can only be used for the purpose of sepulture, and this right, if it exists in either of the relators, is absolute. A body is brought to the grave for burial : how can a remedy be provided except by mandamus, if then and there the corporation refuse to permit the body to be deposited ? This cause is not like the mere disturbance or obstruction of an easement for which damages may be recovered, as in the case of a pew-owner, who has generally a limited usufructuary right only, and who may recover damages for its destruction or loss ; nor is it analogous to the class of cases in which equity would decree the specific performance of a contract, because a remedy must be speedily applied. The very function of the writ of mandamus is to set in motion and compel action, and any existing legal remedy relied upon as a bar to interference by mandamus, must not only be an adequate remedy in the general sense of the term, but it must be specific, and appropriate to the particular circumstances of the case : High, Ex. Legal Remedies, pp. 12–19. Being of the opinion that no legal remedy can be applied in cases of this kind except by the exercise of extraordinary power, I proceed to consider the other propositions of law involved in this case.

" The charter of this corporation is the law of its being, and that charter must be strictly construed.        *        *        *

" Unquestionably, in my judgment, any transfer without the approval of the managers was in direct violation of the organic law of the corporation, and vested no title in Mrs. Jones—the corporation being the paramount owners of the soil, conveyed to Boileau ' subject to the articles of incorporation under the rules and regulations' of the company. As the undisputed owners they undoubtedly could incorporate any covenant in their conveyance not prohibited by public policy, and the article of the charter which prohibits a transfer to any person without the approval of the managers, is a covenant binding upon the grantee in the deed.

" Even if I am mistaken in my view of the law upon this point, the question of title in Mrs. Jones is at least doubtful, and if the case ended here, I should, without hesitation, refuse this writ. There is, however, another relator, and his rights are now to be considered in the final disposition of the cause.

" It is admitted that Boileau is an owner in fee, 'subject to the conditions of the act of incorporation under the rules and regulations adopted by the managers of the cemetery, of the lot specified in the pleadings. Upon the 27th day of September 1875, he endorsed upon a letter written by the superintendent to Mrs. Jones, the following:

\*     \*     \*     \*     \*     \*     \*

(Judge Ludlow here quoted Boileau's endorsement and the secretary's reply.)

" The sixth by-law declares, among other things, ' that no interment shall take place without a written permit from the secretary.'

" Undoubtedly the by-law is a reasonable and legal one, and ought, in a proper case, to be enforced, but under it, can the owner in fee simple be refused the exercise of any right which is incident to an absolute ownership ?

" The answer of this question depends upon the nature of the right claimed, the time when, and manner in which it is proposed to exercise it, under the very terms of the charter and by-laws of the corporation. It is not contended here that any objection can be made to the manner in which it was proposed to bury Henry Jones, nor to the time when it was intended to inter his body.

" The only question then remaining is, what was the nature of the right by virtue of which the relator, Boileau, claimed to act ? Untrammelled by charter or by-law, it is clear that Boileau might bury whomsoever he saw fit in his own lot.

" Under the charter, by section 4, the ordinary rights of an owner were only so far restrained as to limit the use of the lot to the ' sepulture of individuals, societies or congregations, without distinction or regard as to sect.' There is here clearly no distinction in terms as to nationality or color, and the word ' sect' necessarily includes any number of individuals who compose the members of a congregation or society, united in some settled tenets, or who follow the teachings of a certain leader. It would seem therefore that, while individuals may be buried by the owner in fee simple of a lot, in said lot, without distinction of nationality or color, no objection can be made because any individual is a member of a society or congregation, commonly called a ' sect.'

" But it may be contended that, by virtue of some section of the charter and by-laws, ' some condition, rule or regulation' may limit the exercise of a right which belongs to every owner in fee of the soil. In his letter to Mrs. Jones, the secretary of the company refused to give her the usual permit, because Boileau was the owner of the lot, and thereupon Boileau, under the regulation con-

cerning 'permits,' demanded a permit, when he endorsed upon the letter the words, 'please let the bearer bury in the lot.'

"What additional condition, rule or regulation was to be complied with? We have already seen that *individuals*, without distinction of 'sect,' may be buried by an owner in fee of a lot, in the cemetery, and we have searched most carefully thoughout the charter and by-laws to find a single additional condition, rule or regulation upon the subject.

"While the usual rules exist for the adornment of the grounds, depth of graves, payment of charges, &c., the only by law which limits the right to bury an individual, is the 10th, which declares that no person who dies of small-pox, or other contagious disease, shall be permitted to be deposited in the receiving vault, and that no permit shall be granted to a stranger to use the vault without the payment of a certain fee. It is to observed that the action of the managers on 30th June 1875, related only to the transfer of lots; for upon that day, at the request of certain petitioners, it was resolved 'that the officers be directed to refuse to make such transfers.'

"We have already expressed an opinion as to the power of the company to control the transfer of lots; but that question does not arise where the undisputed owner of the ground sees fit to exercise his right as owner, where that right is not limited by charter, by-law, condition, rule or regulation, and is in fact absolute.

"I see nothing in the other points made in this case and not covered by the foregoing opinion; because, if the relators are improperly joined, an amendment will at any time be allowed. The executors ought not to be made parties; and a disputed question of title does not arise, for Mrs. Jones claims either in her own right or under Boileau, and therefore makes no adverse demand.

"On the whole case I am, therefore, of the opinion,

"1st. That Margaret Jones has no legal title to the lot in question, and that the refusal to sanction the transfer of the lot by Boileau to her was within the corporate power of the managers of the cemetery.

"2d. That the relator, William H. Boileau, as the owner in fee of the ground, had the legal right, as an incident to his ownership, to bury the body of Henry Jones in the lot so owned by him, and that the refusal to issue a permit for that purpose was, under the charter and by-laws of the corporation, an arbitrary and unreasonable, and therefore an unlawful interference with the legal rights of the owner of the soil."

Judgment was accordingly entered for the Commonwealth on the demurrer.

The defendants took a writ of error, and assigned for error the entering of judgment for the Commonwealth on the demurrer.

[Mount Moriah Cemetery Association v. Commonwealth.]

*H. C. Titus* and *E. S. Miller*, for plaintiffs in error.—Mandamus will not lie to compel the performance of duties requiring the exercise of discretion : High's Extraordinary Legal Rem. 25. This was a reasonable exercise of discretion : W. C. & Phila. Railroad Co. v. Miles, 5 P. F. Smith 209. Boileau's right was but an easement (Kincaid's Appeal, 16 P. F. Smith 411), for the disturbance of which the remedy is an action on the case : Washburn on Easements 515 ; Commonwealth v. Rosseter, 2 Binn. 362. A mandamus will be granted only in extraordinary cases to prevent a failure of justice : Commonwealth v. Henry, 13 Wright 538 ; James v. Commissioners, 1 Harris 75 ; Commonwealth v. Canal Commissioners, 2 Penna. R. 518 ; Heffner v. Commonwealth, 4 Casey 112 ; King v. Bristow, 6 Term. 168 ; Reading v. Commonwealth, 1 Jones 196 ; Drexel v. Man, 6 W. & S. 386 ; Resp. v. Clarkson, 1 Yeates 46 ; Shipley v. Bank, 10 Johns. 484 ; Boyce v. Russel, 2 Cowen 444 ; Ex parte Robins, 7 Dowl. (P. C.) 568 ; King v. The Free Fishers, 7 East 353 ; King v. Helsham, 2 B. & Ad. 622.

*W. H. Browne* and *W. S. Price*, for defendants in error.— Mandamus is the proper remedy in this case. · The remedy must place the party in the same situation in which he was before the act complained of : Etheridge v. Hall, 7 Porter (Ala.) 47 ; High on Mandamus 19, 20 ; Commonwealth v. Councils of Pittsburg, 10 Casey 509. If the other remedy be not equally convenient and efficacious, mandamus will lie : Tapping on Mandamus 70 ; Fremont v. Crippen, 10 Cal. 211 ; Griffen v. Steele, ·1 Edmunds (N. Y.) 505. It goes much further than merely to compel the performance of a ministerial duty : Commonwealth v. Allegheny County Comm'rs, 8 Casey 223 ; Tapping on Mandamus 64 ; Arberry v. Beavers, 4 Texas 464 ; Kentucky v. Denison, 24 Howard 66 ; Grant's Ultra Vires 45 ; High on Mandamus 204, 207. It will compel the rector, &c., of a parish to do every act requisite for the burial in a churchyard of the corpse of a parishioner : Tapping on Mandamus 109. No vote or act can enlarge the chartered authority of a corporation : Salem v. Ropes, 6 Pick. 23 : Discretionary powers must not be arbitrarily exerted : Tapping on Mandamus 67, 69 ; Green's Ultra Vires 28, 577.

Mr. Justice GORDON delivered the opinion of the court, March 3d 1876.

Beyond the merely technical objection urged against the decree of the court below, and which we regard as properly disposed of in the opinion of his honor Judge Ludlow, there is nothing whatever of merit in the defendants' case.

When Boileau purchased the lot in question there was no restriction on his right of sepulture, and the managers of this com-

pany had no power afterwards to abridge such right by any unreasonable limitation thereon.

The right of interment was refused solely on the ground that the body was that of a colored man. The reason which induced this refusal, as well as the resolution of June 30th 1875, may be found in a petition presented by certain of the lot-owners to the president and board of managers of the cemetery company, which we give *in extenso* :—

" We, the undersigned owners of lots in Mount Moriah Cemetery, having learned that a person of color has purchased from Mr. William H. Boileau a lot in said cemetery, for the purpose of interment, and demands a requisite transfer of the same from the association, do hereby protest against the same, and request that your approval of such transfer be withheld. We are led to make this request by a knowledge of the prejudice which will be aroused against the cemetery if the precedent of the transfer were established, and the consequent depreciation of value of property in this cemetery that would certainly result from such prejudice."

From this it would appear that the officers of the defendant company were moved by a fear of loss which might result to the treasury of the corporation. But as Boileau has some rights in the premises, which are not forfeitable to the pecuniary interests of the stockholders, we are bound to turn a deaf ear to this reason, which appears so sound and obvious to these petitioners. It is said, however, that this was but a reasonable exercise of the discretion of the managers, in view of the general prejudice existing against the colored race.

In a sound code of ethics this prejudice never had a respectable standing, for it was but the child of an abnormal servile system that was entitled to no man's respect outside of the country and laws which maintained it. But at this time, when this prejduice is under the ban of recent constitutional and legal provisionsex, pressly designed for its suppression and extinction, it is scarcely to be expected that we can be induced to endorse its respectabilityor to encourage it to linger longer around the halls of justice.

Were we to sustain the case of the defendant, we should be carried far beyond the limits of The Railroad *v.* Miles, 5 P. F. Smith 209. That case did no more than sustain the power of common carriers to make and enforce such rules and regulations as they might deem just and reasonable with reference to the conveyance of passengers in their own vehicles; whilst we, in the suit in hand, are required, in view of this alleged prejudice, to forfeit the absolute vested rights of a citizen which he holds and claims to exercise under and by virtue of the deed, duly and solemnly executed, of this very defendant corporation.

Now, as The Railroad *v.* Miles, though seemingly just and reasonable, was not in consonance with the will of the people as

[Mount Moriah Cemetery Association *v.* Commonwealth.]

manifested by the legislative Act of March 22d 1867, it is not apparent—should we reverse the judgment of the court below—that we would have even the support of such a broken reed as popular prejudice.                    Judgment affirmed.

Mr. Justice WOODWARD.—I concur in this judgment, on the ground that the regulation established by the company on the 30th of June 1875, could not affect rights vested by the deed previously executed to Mr. Boileau.

Mr. Justice SHARSWOOD.—I dissent from this judgment and opinion.