## Brnilovich *v.* St. George Independent Serbian Orthodox Church of Pittsburgh, Appellant.

Argued March 30, 1937.   Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*J. R. Sheppard,* for appellant.

*Morris Zimmerman,* with him *Elmer A. Barchfeld,* for appellee.

PER CURIAM, April 19, 1937:

Emil Brnilovich secured a mandamus against the St. George Independent Serbian Orthodox Church of Pittsburgh, a Pennsylvania corporation, compelling it to permit the burial of his daughter, five years of age, in the

cemetery owned and operated by the church. Petitioner stated the church refused his application to purchase burial space and permission to bury his child. The court below in granting the writ ordered the church to sell a burial space to the petitioner upon the payment of the usual fee. It was further ordered that in event the decree was reversed on appeal, the child's body should be removed at his cost. The issuance of the writ is assigned as error.

The defendant is a church organization possessing all statutory powers of such associations, among which is the operation of a cemetery in connection therewith: Act of May 5, 1933, P. L. 289, section 214. This cemetery had previously been operated by a separate non-profit corporation, known as the St. George Serbian Orthodox Cemetery, until June, 1935, when it was conveyed to the present owners. The charter of the cemetery company had provided that its purpose was ". . . the maintenance of a public cemetery . . . without profit and non-sectarian." Prior to the transfer of the cemetery, petitioner's father and mother-in-law had been buried there.

Petitioner, not a member of the church, contended that as his relatives rest there and he is of the same nationality and religious faith, he has a right to bury his daughter in the cemetery. Petitioner also urges that the present charter of the church states that as a collateral purpose it is organized to maintain "a public burial ground," and, therefore, this burial ground is open to the public on a non-discriminatory basis. The church holds the cemetery is not open to the public but is restricted to its members in accordance with its rules and regulations.

The court below found that the property had been dedicated to the public by corporate use for 14 years, and the public use remained, estopping the church to assert to the contrary. Emphasis was placed on the fact that as members of petitioner's family had been buried there,

it was reasonable to expect that he and other relatives would likewise desire to rest with them.

The court below was mistaken on all grounds. The child had no more right to be buried in that cemetery than it did on the premises of a privately owned home. There was no right of any description to bury the child there. The privilege of burial in any cemetery, whether associated with a church, incorporated under our laws, or conducted by an unincorporated association, must be founded upon some title or right recognized by law. The right of burial in a cemetery of a religious or fraternal association is usually derived from membership, as an incident thereto, or by virtue of express contract. In *Mt. Moriah Cemetery Association v. Commonwealth,* 81 Pa. 235, it was said that the transferee of a deed to a burial lot of a corporation, did not have the absolute right to interment in it without the corporation's consent thereto.

Appellee has no contract with the church for the privilege of burial; he has no title to any lot in the cemetery acquired before or after its transfer to the church. Where a religious association maintains a cemetery, it may, under its laws, limit the privilege of burial to its own membership and exclude all others. Like all other church property, its control is governed by the rules and usages of the particular religious group. Lots in such cemeteries may only be acquired upon the conditions expressly or impliedly prescribed by the body of its laws.*

---

*In *People v. Trustees,* 21 Hun (N. Y.) 184, at 193-194, it was said in regard to burial in a Catholic cemetery: "Every applicant is presumed to know, that it is not an ordinary cemetery, incorporated and conducted for the purpose of general and indiscriminate burial, but a corporation attached to the Roman Catholic Church, with power to make lawful rules, regulations and by-laws. In fact, the cemetery is part of the temporalities of this great Church. . . . Where a party applies for a burial plot, at the office of a distinctively Roman Catholic Cemetery, it is with the tacit un-

Where an applicant for burial in the cemetery of a particular church is not a member of that congregation, the right of burial may be denied and the court has no power to force such burial: *St. John's Church v. Hanns*, 31 Pa. 9; *St. John United Greek Catholic Church v. Misak*, 19 Northampton County Reporter 159. Even those who are members of a congregation have no right to burial except such as is conferred by the church laws. In *Congregation Shaarai Shomayim v. Moss*, 22 Pa. Superior Ct. 356, at 361, it was said: "No individual member of the congregation acquired a right to be buried in that ground save under such regulations as the congregation might reasonably impose."

Justice SHARSWOOD long ago likened the privilege of sepulture in a cemetery to that of pew right, which confers upon the grantee only a license to use the property subject to church ordinations, and said in *Kincaid's Appeal*, 66 Pa. 411, at 422, of such a licensee: "He must be presumed, from the very nature of the subject-matter, to have taken the grant under all the conditions and limitations incident to such property."

The right of control over cemeteries maintained by churches, like all other temporalities held by religious associations, is vested, under the law of this State, in those designated by the canons, regulations and customs of the church society. See Act of June 20, 1935, P. L. 353, Section 1; *Canovaro et al. v. Brothers of the Order of Hermits of St. Augustine*, 326 Pa. 76; *Post et al. v. Dennis Cardinal Dougherty*, 326 Pa. 97. In *Maceirinas v. Chesna*, 299 Pa. 70, the court held that the proceeds derived from the sale of burial lots in a church cemetery are to be controlled by those vested with such power under the prevailing law.

The fact that appellee's relatives are interred in a single grave space in this cemetery does not invest him,

derstanding that he is either a Roman Catholic, and as such eligible to burial, or at least that he applies on behalf of those who are in communion with the church."

or other members of his family, with any legal right to future burials in this land. At most his relationship gives him the right to protect the grave from unlawful and unwarranted desecration. See *Craig v. First Presbyterian Church*, 88 Pa. 42; *Anderson v. Acheson*, 132 Iowa 744, 110 N. W. 335; *Partridge v. First Independent Church of Baltimore*, 39 Md. 631.

Appellee's contention that this is a public cemetery under present church ownership is not sound. The word "public" used in the church charter does not confer an unlimited right of burial to any one which cannot be denied by church authorities. Nor may they be compelled outside of its rules and regulations to admit to burial privileges any and all persons without discrimination. Even cemetery corporations have not been declared to be public service companies that may be regulated by statute or controlled by the courts so far as discrimination is concerned. The very nature of this religious body precludes any assumption that the cemetery is to be operated on such a basis. As a matter of fact, the charter itself expressly makes the operation of the cemetery "collateral" to the main purpose set forth, which is "the support of the public worship of Almighty God *according to the forms, principles, doctrines and usages of that body of Christian worshipers known as Serbian Orthodox Church. . . .*" The plain import of this language is to limit the use of all the church property for the worship of God in accordance with the principles and tenets of the church and, incidentally, to provide a place of burial for those who are members in good standing. It is in this sense that the word "public" is used. It is quite evident if anyone, irrespective of membership in the church, was permitted to assert a right of burial in this cemetery, the practical effect would be to deprive church members of the right to be interred in their own cemetery and create religious disturbances. If the law could control the right of burial in this regard it could fix the price for burial lots. This

would be inconsistent with the purpose for which any cemetery is maintained.

Moreover the court below was in error in holding appellant estopped to deny to the public the use of this land upon the payment of the prescribed fees, because of the fact that it had been operated upon a non-sectarian basis. The facts show that it was a private corporation and that there had never been a dedication of this land to the public. It would be an unusual thing to hold land was dedicated to public use merely because it was used for purposes permitted by a charter. The cemetery company could have imposed regulations and restrictions upon the right of burial consistent with its charter. Appellee acquired no rights from that cemetery company; he is utterly without standing to contest the right of appellant to make its own rules for the acquisition of burial space.

As appellee failed to prove any title, contract or right, through membership, or otherwise, in this church cemetery, he could not force the burial of his daughter within its bounds, and the court should not have granted mandamus. Appellee has already interred his daughter in the cemetery, and counsel for appellant have stated to the court that the church will not compel the exhumation of the child's body when the decree of the court below is set aside. The church has no wish to disturb the last repose of the little girl now that she has been laid to rest. Appellant, not wishing to yield by this concession any legal right as to the major question, the right of control, desires to have made clear that those who are not members of its congregation have no right to inter their dead within its cemetery, regardless of the fact that their relatives may have been interred therein.

Decree reversed with the understanding appellant will not require the exhumation of the body of appellee's daughter from its present resting place; costs to be paid by appellee.