## Lichtenwalner's Estate

*Wilson A. Wert,* for accountant.
*Daniel M. Garrahan,* for petitioners.

GEARHART, P. J., August 11, 1938.—This matter arises on a petition by Edgar Lichtenwalner, Bessie Seislove, and Wilbur Lichtenwalner, sons and daughter of Levinus Lichtenwalner, deceased, seeking to enjoin Ellis Lichtenwalner, administrator d. b. n. of the estate of Levinus Lichtenwalner, from exposing at public sale five cemetery lots located in the Cedarville Union Church Cemetery, Lehigh County, Pa.

A rule issued, to which an answer was filed, and the matter was submitted to the court for disposition on briefs filed. The facts in the case are not in dispute. In substance, the administrator takes the position that the cemetery lots must be regarded as personalty, and such being the case, he has the right to sell the same for purposes of distribution. Petitioners, on the other hand, hold that the interest in the burial lots is not personalty, but partakes of the nature of real estate, and upon the death of the decedent, title to the same vested by operation of law in all of the heirs.

Decedent died intestate August 15, 1901, leaving to survive him a widow (who has since died), the three petitioners, and the respondent. In four of these burial lots, which are contiguous, there are buried nine members of the Lichtenwalner family, including the decedent and

the widow. In one of the lots no burial has been made. A large and expensive monument was erected by the widow of the decedent on the four contiguous lots. The cemetery is operated and managed by the Consistory of the Cedarville Union Church. The lots were purchased by decedent about 1897, and at that time he received a certificate in the following terms:

"I HEREBY CERTIFY, No. Block G That Levinus Lichtenwalner has this day paid to the
CONSISTORY OF THE CEDARVILLE UNION CHURCH,
of South Whitehall, Lehigh County, Pa.,
the sum of Twenty Dollars for Section No. 1, 16 feet, more or less, said Cemetery being part of the old burial ground of the Cedar Creek Lutheran and Reformed Congregations. I therefore sell, assign and transfer said section to said Levinus Lichtenwalner heirs and assigns, to be held by himself, his heirs or his assigns, while remaining subject to the constitution and by-laws of said Lutheran and Reformed Congregations and all amendments or additions thereto.

IN WITNESS WHEREOF, I have hereunto set my hand and seal, this 4th day of April in the year of our Lord One Thousand Eight Hundred and 97.

| | | |
|---|---|---|
| Signed and delivered in | ) | Adam Nunnemacher |
| presence of | ) | (SEAL) |
| D. H. Miller Secty | ) | Trustee of the Congrega- |
| Jacob Haines | ) | tions." |

It is to be observed that the conveyance is to Levinus Lichtenwalner, "heirs and assigns, to be held by himself, his heirs or his assigns, while remaining subject to the constitution and by-laws of said Lutheran and Reformed Congregations and all amendments or additions thereto." Unfortunately the constitution and by-laws of the congregation are scanty and do not cover the precise question here raised, but deal instead largely with the matter of perpetual care. In by-laws and amendments to the

constitution adopted July 9, 1916, there is provision made for the perpetual care of a lot upon the payment of a minimum of $100. The amendment also provides that:

"No lot or ground for a single grave or graves shall be sold to anyone not a member of said Cedar Union Church without a Perpetual Care certificate, which must be paid in full before burial will be permitted."

On December 24, 1934, certain other amendments were adopted. They provide:

"Any person or persons wishing to erect a vault on the Cedar Union Cemetery, must do so on a plot laid aside on the Northwest corner of the cemetery. Any person or persons having a plot or plots without any grave may have same exchanged for a plot in the Northwest corner of the cemetery."

This is the extent of the by-laws and the constitution that have been brought to the attention of the court.

It is plain from a reading of the certificate that when decedent took title to these burial lots he did so subject to such reasonable regulations governing the maintenance, burial, and sale as were in existence and would be made from time to time by the Consistory of the Cedarville Union Church. It cannot be questioned but that the right was reserved in the consistory to make such regulations as it deemed wise and expedient from time to time. These regulations would affect the original owner as well as his grantees and devisees: Brnilovich v. St. George Independent Serbian Orthodox Church of Pittsburgh, 326 Pa. 218.

The question here presented, whether burial lots shall be regarded as personal property or real estate, has not been flatly ruled upon. An examination of the authorities reveals that the courts have had trouble in determining whether the property in a burial lot may be regarded as an easement as distinguished from an absolute estate in the soil, or whether it is a license or a base or qualified fee in the land. See Holbrook's Estate, 1 Dist. R. 259,

and cases therein cited, Pitcairn v. The Homewood Cemetery, 229 Pa. 18, and Love v. Robinson, 219 Pa. 469.

In Pitcairn v. The Homewood Cemetery, supra, the words found in the deed are to " 'grant, bargain, sell and convey,' " said lot to " 'Robert Pitcairn, his heirs and assigns,' " to have and to hold the same to him, " 'his heirs and assigns forever,' " subject to the conditions, etc. Judge Swearingen, writing the opinion of the lower court, which was affirmed by the Supreme Court in a per curiam opinion, said:

"Thus the language of this deed is the ordinary and necessary language used in a conveyance by deed of a fee simple. Apt words of inheritance are used, the 'heirs' inherit generally, without restriction to any particular heirs, and forever. Yet the estate, which passed to Robert Pitcairn, was not a fee simple absolute . . . The estate which Robert Pitcairn took is not liable to an abnormal termination. It goes to his heirs generally without limit in duration; and there is no provision for a forfeiture or reversion. . . . "

"We hold, therefore, that the estate which Robert Pitcairn took was a fee, restricted as to alienation generally and as to use, and it is to be held subject to the rules and regulations contained in the deed and to those which may be adopted in a lawful way: Mount Moriah Cemetery v. Com., 81 Pa. 235; Rosehill Cemetery Co. v. Hopkinson, 114 Ill. 209 (29 N. E. Repr. 685).

"We are thus unable to agree with the defendant that Robert Pitcairn acquired but a license or easement in the lot aforesaid."

In Holbrook's Estate, supra, the accountants charged themselves with $1200 proceeds of sale, under a decree of the orphans' court, of certain cemetery lots, owned by decedent, in the Woodlands Cemetery. The question there arose whether the fund should be regarded as real estate or personalty. The deed for the lots to decedent contained these words: " 'his heirs at common law and assigns,' of 'the exclusive and entire right of interment or sepulture

only,' and upon condition that no sale or transfer of the lots, or right of interment, should be made without the approval of the managers," etc. It was decided in that case that the proceeds of the lots should be regarded as real estate and did not pass to the executor or administrator.

In Jacobs v. The Union Cemetery Association of Allentown et al., 1 Pa. Superior Ct. 156, wherein the purchaser took title to the cemetery lots, words somewhat similar to those in the instant case were used. The court said in part:

"The heirs, it may be here said, had the right to dispose of any interest their ancestor may have had in the lot at the time of his death, so long as his creditors made no complaint: Walworth v. Abel, 52 Pa. 370."

In Love v. Robinson, supra, the original purchaser, Mary Ann Robinson, took title by conveyance to " 'her heirs and assigns forever, subject however to the rules, conditions and limitations'." Subsequent to her death, certain of the heirs started partition proceedings. One of the heirs objected and a bill of partition was dismissed. In discussing the case, Mr. Justice Mestrezat stated at page 475:

"It will be observed, therefore, that the title of the purchaser of a burial lot in this cemetery is not an absolute, fee simple title. He acquires the lot simply for burial purposes, and therein he and the members of his family may be buried. The regulations forbid the burial of any other person in the lot, except upon special permission in writing obtained at the office of the corporation. It is true that the owner may dispose of it by will, but the devisee will hold it subject to the rules and regulations of the cemetery. The parties to this litigation, however, do not hold the lot under a devise from the purchaser, but by inheritance, and the rules and regulations, as we have seen, further limit the rights of such heirs in the property."

In 11 C. J. 60, sec. 25, under "Descent of Title" we find:

"A burial lot is regarded as property in which title may in most cases descend to heirs. It does not pass under a general residuary clause in a will, but descends to the heirs as intestate property. An heir to whom a burial lot descends takes it subject to all the conditions under which the ancestor held it."

In view of the foregoing authorities, we are of the opinion that upon the death of Levinus Lichtenwalner, intestate, whatever property right decedent had in the burial lots, and by whatever name it may be called, descended to his heirs at law. The use to which the burial lots may be put is subject to such reasonable regulations as the Consistory of the Union Church shall promulgate from time to time. As has been shown, the lots are not subject to partition proceedings, and therefore against the objection of any of the heirs may not be sold. The lots are for the use of all of the heirs of Levinus Lichtenwalner, and since decedent's debts are all paid, the administrator has nothing whatsoever to do with them other than in his individual rights as an heir.

Under section 9 (d) of the Orphans' Court Act of June 7, 1917, P. L. 363, the control, removal, and discharge of executors and administrators is within the jurisdiction of the orphans' court, and by section 16 of the same act the orphans' court has power "to prevent, by orders in the nature of writs of injunction, acts contrary to law or equity, prejudicial to property over which they shall have jurisdiction": Orr's Estate, 283 Pa. 476; Lafferty et al. v. Corcoran, 180 Pa. 309; Henderson, Hull & Co., Ltd. v. Stryker et ux., 164 Pa. 170; Mauser v. Lerch et al., Execs., 7 D. & C. 242; Heinz's Estate, 313 Pa. 6.

And now, August 11, 1938, the rule is made absolute, and Ellis Lichtenwalner, in his capacity as administrator d. b. n. of the estate of Levinus Lichtenwalner, is restrained from offering at either public or private sale the burial lots located in the Cedars Union Church Cemetery belonging to the estate of Levinus Lichtenwalner. Costs to be paid by Ellis Lichtenwalner.