O'LEARY et ux. v. SOCIAL SECURITY BOARD.

No. 8981.

Circuit Court of Appeals, Third Circuit.

Argued Jan. 7, 1946.

Decided Jan. 29, 1946.

---

[4] Compare § 927.1(e), quoted above—"who produces milk *which is delivered,*" etc.

Hubert H. Margolies, of Washington, D.C. (John F. Sonnett, Acting Head, Claims Division, of Washington, D.C., and Frederick V. Follmer, U. S. Atty., and Alphonsus L. Casey, Asst. U. S. Atty., both of Scranton, Pa., on the brief), for appellant.

Patrick E. O'Leary, of Altoona, Pa. (J. Banks Kurtz, of Altoona, Pa., on the brief), for appellees.

Before GOODRICH, McLAUGHLIN and O'CONNELL, Circuit Judges.

GOODRICH, Circuit Judge.

This case raises the question whether the claimant, Denis J. O'Leary, is a "fully insured individual" so that he is entitled to primary insurance benefits under the Social Security Act.[1] That question in turn depends upon whether O'Leary was in "covered employment." He was not in covered employment if his employer, the Calvary Cemetery Association, is a corporation "organized and operated exclusively for religious * * * purposes." This question, therefore, is the turning point of the case. The Board said that the cemetery association met the test of organization and operation for an exclusively religious purpose. The District Court, to which an action to review was instituted under § 205 (g) of the Act, 42 U.S.C.A. § 405(g), held contra. The Board, on this appeal, complains that the District Court failed to give its conclusions the weight to which they are by law entitled and, independently of that failure, the decision was incorrect.

■ Our conclusion upon the merits is that the Board was right and the District Court was wrong. That being so, we may reserve for future occasion the question how far a court is bound to accept both the finding of evidential facts by the Social Security Board and the conclusions and inferences drawn from the facts. The Tax Court's conclusions, we have been taught, are to be accepted unless its rule of law is wrong. Dobson v. Commissioner, 1943, 320 U.S. 489, 64 S.Ct. 239, 88 L.Ed. 248; Commissioner v. Scottish American Inv. Co., 1944, 323 U.S. 119, 65 S.Ct. 169. Whether determinations by the Social Security Board are to be given equal effect we are not now deciding one way or the other.[2] Cf., however, Walker v. Altmeyer, 2 Cir., 1943, 137 F.2d 531.

We turn then to the question upon which the District Judge substituted his own conclusions for that of the Board. This cemetery association was organized, as stated in § 1 of Article 2 of its Constitution and By-Laws, for the "forming and maintaining of a public cemetery for the burial of deceased Roman Catholics who may be entitled to burial according to the law, rules and regulations of the Roman Catholic Church." The question we have before us, therefore, is whether an organization formed and maintained for this purpose is

---

[1] Social Security Act, Title II, § 202(a) [and § 202(b) for wife] as amended. 42 U. S.C.A. § 402(a) [42 U.S.C.A. § 402(b) for wife].

[2] 42 U.S.C.A. § 405(g) states in part: "The findings of the Board as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied by the Board or a decision is rendered under subsection (b) hereof which

is adverse to an individual who was a party to the hearing before the Board, because of failure of the claimant or such individual to submit proof in conformity with any regulation prescribed under subsection (a) hereof, the court shall review only the question of conformity with such regulations and the validity of such regulations."

one which is engaged in an exclusively religious function. In agreeing with the Board that it is, we do not, by any means, say that conducting a burying ground is always a religious observance. It may be completely religious or semi-religious or not religious at all. We are talking here about a cemetery association run by and operated for Catholics. What was said in a New York case is appropriate in this connection: " ' * * * it is not an ordinary cemetery, incorporated and conducted for the purpose of general and indiscriminate burial, but a corporation attached to the Roman Catholic Church, with power to make lawful rules, regulations and by-laws. In fact, that the cemetery is part of the temporalities of this great church. * * * ' " [3]

We think the question concerning the claimant's employment is to be settled in accordance with what the Roman Catholic Church, itself, declares through its ecclesiastical law, through its authorized spokesmen and through the rules it establishes for the guidance of its members. These rules and precepts of the Church do not become the law of the land. But they do show the position of the Church with regard to the matter in question and the rights and duties of communicants of the Church with respect thereto. If the Church regards the burial of its deceased communicants and the maintenance of the burying place as part of its religious observances we think that fact makes the operation of the described burying ground a religious function.

Some of the requirements of the Catholic Church on this subject are matters of common knowledge. Perhaps it is not equally well known how clear are the statements of position on the matter. Of this we may take judicial notice and we do. The following statements, we think, clearly demonstrate the complete correctness of the Board in its decision in this case.

In a chapter delineating the rights of the Catholic Church it is said, "Nevertheless sepulture is a religious act and the ceme-

tery is deputed a religious place." [4] Earlier in the same chapter we find this clear statement of doctrinal principle; "The authority to which the Church is entitled relative to Catholic cemeteries should not be limited by any encroachment of the State. * * * Truly then, the cemeteries, in which the bodies of the faithful departed are laid to rest in such a becoming manner accompanied by the sacred rites, are intimately connected with the end of the Church. In the first place, the character of these places is sacred. The Church demands that they be blessed according to her sacred ceremonial and to be held in reverent repute. Over 'res sacrae' her dominion must be supreme. Then secondly, She has the inviolable right of preserving Her cemeteries solely for her own. A principle of canon law, as contained in the Decretals of Gregory IX states, 'with those with whom we have had no communion while living, we do not communicate when dead.' Consequently She reserves for the faithful the title and custody of the Catholic cemeteries and permits of no trespass therein on the part of non-Catholics." [5] That these principles apply to any cemetery which designates itself as Catholic is equally clear. Catholic cemeteries to be recognized as such must receive constitutive blessing, either simple or solemn, and " * * * Constitutive blessing may be defined as— 'that invocation of the Divine Name by which persons and things are detached from profane use and their former condition, so as to be dedicated in perpetuity to Divine Cult as sacred persons and sacred things.' In this light we understand by the blessing of the cemetery—that segregation of the place from its former condition by rendering it a sacred place." [6] In a special note concluding the chapter on immunity of the cemetery, we find "N.B.—It must be noted that this prerogative of immunity belongs only to the Catholic cemeteries, or, at least, to those cemeteries which have been blessed according to the rites of the Church. From this blessing, a cemetery receives its sacred character and the consequent effects—one of which, is this ecclesi-

---

[3] People v. Trustees, 21 Hun, N.Y., 184, at pages 193, 194 quoted in Brnilovich v. St. George I. S. Orth. Church, 1937, 326 Pa. 218, 191 A. 655, 110 A.L.R. 384.

[4] O'Reilly, Ecclesiastical Sepulture in the New Code of Canon Law, 9, Chapter I. Rights of the Church.

[5] Id. p. 8, citing Wernz, Jus Decretali-

um, Tom. III No. 469; Cavagnis, Institutiones Juris Publici Ecclesiastici, Vol. III Lib. IV, No. 278; and Laurentius, Institutiones Juris Canonici, No. 933.

[6] Id. p. 14, citing Can. 1205; Wernz, supra, No. 760; Noldin, De Sacramentis, No. 52; and Coronata, De Locis Sacris, No. 4.

astical immunity." [7] Again in a section subheaded "Sacredness of the Place" of burial we are told, "The dominion of the Church over Catholic cemeteries and over the bodies of the dead who have been interred, is inviolable." [8] Three additional matters might briefly be mentioned. The first is a possible objection stated and answered in these words, "An objection might be put forth, that since sepulture is from the 'jus gentium' prescribed by the law of humanity, it is to be regulated by the natural and civil order; the accompanying religious rites are only additions to it. This is not true. The Christian religion has elevated sepulture to a religious office; sepulture is considered as a "res religiosa.' " [9] Secondly it is recognized that the cemetery need not be a physical part of or adjacent to the Church property. In fact, it is stated that "In the case which is nowadays rare, that the cemetery adjoins the Church, there arises several particular contingencies." [10]

Finally, the fact that a portion of the cemetery is reserved for non-ecclesiastical burial does not change the nature of the cemetery. Thus we are told, "Ecclesiastical burial is not conceded to all simply because they are Catholics. Certain unworthy persons are denied this privilege. * * * Nevertheless, the Church is a benign and loving Mother and does not refuse the offices of piety and humanity even to her undeserving children. And yet, a distinction must be provided. Consequently, the law states, that besides the blessed cemetery, another place should be designated, enclosed and protected as the cemetery, where they may be buried who are denied ecclesiastical sepulture. Those denied are of two classes—the unbaptized, and certain delinquents." [11] From what has been said it is manifest that a Catholic cemetery association formed and maintained for "burial according to the law, rules and regulations of the Roman Catholic Church" is in the eyes of that Church religious in nature; and by virtue of the quoted provision of its Constitution and By-Laws, must necessarily be a religious corporation in its own eyes. That is enough, we think, for the Social Security Board.

The particular corporation involved here was organized under the Pennsylvania law of 1874. That statute recognizes the difference between a corporation to maintain and operate a cemetery and a corporation formed for religious purposes. Each purpose was authorized as a form of non-profit corporation. The two evidently could not be combined. This was, however, changed by the Act of 1933, 15 P.S. Ch. 49A, § 2851—315, § 2851—214(3).

■ This excerpt from the history of corporation law in Pennsylvania had some significance in the District Court's mind and was urged upon us in argument here. We think that it has little or no significance. If it had any, the Act of 1933, we think, removed it. But further than that, it is to be borne in mind that this is a nation-wide statute conferring benefits upon employees on a nation-wide scale. We think its sweep is not to be interrupted by the variations and idiosyncracies in local law whether that local law be master and servant or part of a corporation code. See Matcovich v. Anglim, 9 Cir., 1943, 134 F.2d 834, 836; American Oil Co. v. Fly, 5 Cir., 1943, 135 F.2d 491, 493.

■ We are sure we are right when we agree with the Board that this cemetery was maintained for a religious purpose. We regret that the result of that conclusion is to deprive these claimants of benefits under the Social Security Act. The wisdom of omitting from the coverage of that Act those people who are employed by religious corporations is a matter for the Congress and not for us. We have no doubt that the subject of the appropriate coverage will continue to receive careful attention by the legislative body.

The judgment of the District Court is reversed.

[7] Id. p. 35.
[8] Id. p. 44.
[9] Id. p. 9.

[10] Id. p. 32.
[11] Id. p. 40, citing Can. 1212.