# Walworth *versus* Abel.

1. The mere legal estate of a decedent passes to the administrator, but if
there be no creditors, the heirs have a complete equity in the property, and
may distribute it amongst themselves without administration.

2. Family arrangements are favourites of the law, and if fairly made are
not to be disturbed by the parties.

3. The widow and heirs of a decedent, against whose estate there were no
debts, made an arrangement by which his property was distributed. Ad-
ministration was afterwards taken out, and suit was brought by the administ-
rator to recover part of the property : *Held,* that the expense of administer-
ing was not a debt which would justify the proceeding.

4. A joint owner of a chattel cannot maintain trover against his fellow for
a sale of the chattel.

5. Even if in case of sale a recovery could be had from the *vendee* of one
joint owner, no more could be recovered than the value of the plaintiff's
share.

ERROR to the Court of Common Pleas of *Susquehanna county*.
This was an action of trover, commenced February 22d 1864,
by Henry Abel, administrator, &c., of Silas Torrey, deceased,
against Rufus Walworth, for a pair of oxen. Torrey in his life-
time was the owner of a farm, and on the 24th of September 1857
agreed in writing with Albert Capron, the husband of his grand-
daughter, to convey to him 40 acres, part of the farm, the object
being the settlement of Torrey's affairs, and " to provide for himself
and wife a maintenance and support during their declining years;"
Capron to cultivate the *whole* farm in a farmerlike manner during
the life of the survivor of Torrey and his wife, to deliver them
one-half the produce, &c., and to do other things connected there-
with, specified in the agreement; Capron to have " also one-half
the growth of the stock," the use of farming utensils, &c., and
when the half reserved for them, and Capron's services, should
be insufficient for their " necessary wants," Capron was to do
" for them whatever might be necessary for their maintenance and
support," the repayment to be secured to Capron on the remain-
ing part of the farm. The oxen were bought by Torrey in his

lifetime, and were on the place at his death, January 29th 1859; Capron exchanged the oxen with Walworth for a horse; there was evidence that they were worth about $25 more when exchanged than when bought by Torrey. The widow died January 1862.

On the trial, before Streeter, P. J., the defendant offered to prove that "A. Capron bought the interest of the three heirs of S. Torrey, deceased, in the land and in all the personal property of said decedent (including the cattle now in controversy), soon after the death of said Torrey; that said heirs were of full age at the time; that the widow of said Torrey also consented to it; that the consideration of his purchase was his agreement to support and maintain during their lives the said widow and Nancy (one of said heirs), and to acquit and discharge said other two heirs therefrom; that he also paid as a further consideration to Mary Baily (one of said heirs) $70; that in pursuance of said contract of purchase, Capron possessed and used the stock (including these cattle) and the place, and that he has ever since maintained and provided for the said Nancy, and that he did support the said widow during her life, according to said agreement; that there were no creditors of said Torrey or of said widow, or of Nancy, to complain of this arrangement; that Capron exchanged these cattle with defendant for a horse, which he brought on to the place and used (with another horse he had previously bought) as a team on the place, and that it was necessary that he should have a better team than the cattle were. This was done during the widow's life, and with her knowledge and approbation."

The court rejected the offer, and the defendant took an exception. There was a verdict for the plaintiff, and this ruling was assigned for error. The defendant assigned for error, also, the following parts of the charge, to which the paper-books did not show that exception was taken.

"But had Capron such an interest in the property, as would constitute him a joint owner, or tenant in common? We think not. By the terms of the written agreement, Capron was to have one-half of the growth of the stock; and, although you should be satisfied from the evidence, that the cattle were worth at the time of the sale to Walworth, more than they were when Capron took possession of them in 1856, this fact, in the judgment of the court, would not make Capron a joint owner of the property; and his interest in or right to a share of the growth of the cattle, would not prevent the plaintiff from maintaining this action.

"Capron was a bailee of those cattle. He had the right to retain them for the purposes of the bailment, during the lifetime of the widow, Mrs. Torrey. But by his own act he determined the bailment; at that moment Torrey's representatives have not only the title, but the right of immediate possession. We there-

[Walworth *v.*. Abel.]

fore instruct you- that the fact that Capron was to have the use of the team- of cattle till the death of Mrs. Torrey, would not be sufficient to defeat the plaintiff's action.

"If you believe the plaintiff's evidence, which is not contradicted by the defendant, the plaintiff is entitled to recover the value of the cattle at the time of the conversion, with interest up to this time."

*R. B. Little,* for plaintiff in error.—An administrator's interest is but a qualified one: Toller on Ex'rs. 133; Gordon on Decedents 94. The widow and next of kin could agree on a distribution different from that provided by law, and being a "family settlement," and there being no creditors, it would be sustained: Calhoun *v.* Hays, 8 W. & S. 132; Barrington *v.* Clarke, 2 P. & W. 123; McMahon *v.* McMahon, 1 Harris 380; Lee *v.* Gibbons, 14 S. & R. 105.

If Capron had any property in the cattle, trover against him would not lie by Torrey or his representative: Trout *v.* Kennedy, 11 Wright 387. Trover will not lie, unless the plaintiff has the right of possession at the time of the alleged conversion: 1 Chit. Pl. 149; Ward *v.* Taylor, 1 Barr 240; Lewis *v.* Carsaw, 3 Harris 31, 34; Fitler *v.* Shotwell, 7 W. & S. 14.

*Bentley, Fitch & Bentley,* for defendant in error.

The opinion of the court was delivered, October 17th 1866, by

THOMPSON, J.—It is material to bear in mind in this case, that the widow and heirs are not seeking to recover property of the estate without letters of administration. Ordinarily this cannot be done. The proposed testimony raises a very different question, viz.: that the cattle, for which this suit was brought, were obtained by the defendant in exchange for a horse; the interest of the estate in the cattle having been purchased from the widow and heirs by his vendor, there being no debts whatever against the estate, and no administration. This it is contended conferred title to the cattle upon him, which could not be disturbed unless debts appeared.

No doubt the personal estate of a decedent vests in the administrator, but in trust for creditors and heirs or legatees. The mere legal estate passes to the administrator, the equitable descends upon the parties entitled to distribution. If there be no creditors the heirs have a complete equity in the property, and if they choose, instead of taking letters of administration, to distribute it by arrangement made and executed amongst themselves, where is the principle which forbids it?

The parties to such an arrangement executed would be for ever equitably estopped from disturbing it, as amongst themselves, upon

[Walworth *v.* Abel.]

the most familiar principles of justice. And why shall the arrangement be broken up by a mere intermeddler? Family arrangements are favourites of the law, and when fairly made are never allowed to be disturbed by the parties, or any other for them. If there be no creditors in this case, the recovery of the value of the cattle would be only for the purpose of distribution among the heirs; but this they have done themselves, by an appropriation of the value already—and thus is accomplished what cannot be done over again without breaking up the arrangement, and without manifest injustice to the defendant. Taking the offer as true, as we must in this stage of the case, we think the testimony should have been received. It was a good defence to the claim of the administrator. If there were no debts at the time the letters were granted, and no question of distribution requiring the intervention of an administrator, the expense of administering, the result of unnecessary interference, would not be a debt which would justify the proceedings. Lee *v.* Gibbons, 14 S. & R. 105, cited by the plaintiff in error, has not much bearing on the point. There a trust was enforced by heirs, without administration, against a party who had declared that he held certain property of a decedent in trust for them, derived, it is true, from their ancestor. There were no debts. The declarations of the defendant were held equivalent to an express promise to the heirs, and hence the suit was maintained. To the same effect we held in a case not yet reported—Jones, Executor, *v.* Wade and Wife. These cases belong rather to a different class from the present. For the reasons, however, already stated, we think there was error in rejecting the defendant's offer.

We do not know whether this was a case of mere intermeddling or not by the plaintiff below, but it looks like it. He was a stranger to the decedent and the heirs, we are told; and although his letters of administration are valid until revoked, certainly he was not a party whom the law regards as entitled in the first instance to administration. If those entitled first to administration, the widow and heirs in succession, preferred a settlement of their own affairs without going into the Orphans' Court, and could do it without interfering with the rights of others, the law did not forbid it, and a stranger might well have afforded to forbear interference, the effect of which was to disturb an amicable family arrangement.

The other assignments of error are to the charge—to which there does not seem, by the paper-books, to have been any exception. Not appearing there, we ought to take it that there was no exception taken. The rules of court require that all exceptions intended to be insisted on should appear in the paper-books.

As to the first of these assignments we may remark, however, as the case goes back, that if there was a joint ownership between

[Walworth *v.* Abel.]

Torrey and Capron of the cattle, Trout *v.* Kennedy, 11 Wright 387, is an authority in point that the former could not have maintained trover against the latter for a mere sale of them. Could he against his vendee? That is perhaps a different question. The case of Agnew *v.* Johnson, 5 Harris 375, recognises the right of one tenant in common to recover, against a stranger, the value of his interest in property diverted from its original purpose by a sale to such stranger, who claims the exclusive possession. But the same authority shows that such plaintiff can only succeed in the absence of a plea in abatement to the nonjoinder of all the co-tenants as plaintiffs. Without this the party would not be entitled to recover more than the value of his own share. It would seem to us, therefore, that there was error in the instruction to the jury to find in favour of the plaintiff the full value of the cattle, without the qualification that they should be of opinion that there was no tenancy in common in the cattle between Torrey and Capron.

This is noticed not as a ground of reversal, for the reason already stated, that it was not excepted to, but that error may be avoided in this particular if the case be again tried. If there was no joint ownership of the cattle as between Torrey and Capron, then it was a case of bailment; and unless the offer of the defendant to prove a purchase from the widow and heirs be fully made out as already noticed, the plaintiff would be entitled to recover, without something different from what thus far appears is interposed.

Judgment reversed, and *venire de novo* awarded.