## Aaron Jacobs, Appellant, *v.* The Union Cemetery Association, of Allentown, and Mayberry S. Weidner.

*Cemetery associations—Transfer of lots—Rules of association.*

The ownership of lots in a cemetery is a qualified property or easement and its transfer or sale is subject to the rules which may be prescribed by the constitution and by-laws relative to recording of such transfers.

*Heirs may convey cemetery lot.*

The heirs have the right, subject to claims of creditors, to dispose of any interest their ancestor may have had in a cemetery lot at the time of his death.

*Conveyance of cemetery lots—Recording assignment—Laches—Notice.*

The owner of a cemetery lot, in 1861, sold the same by assignment indorsed on the original "certificate of ownership;" his assignee in 1865 sold by similar indorsement to plaintiff. Neither assignment was registered on the books of the company as required by its constitution. The plaintiff gave no notice of the assignment to the company and made no physical manifestation of ownership by occupation of the lot in any way. In 1889 the first owner having died his heirs sold the lot, after having displayed a sign "For Sale" for some time, in ignorance of the previous

sale by deceased owner, all parties supposing the original certificate of ownership to be lost; the conveyance by the heirs was registered; the vendee of the heirs again conveyed to the defendant Weidner, the assignment to him being also duly registered. Weidner erected a costly monument on the lot; plaintiff seeing the monument for the first time, claims ownership in 1892, and files a bill praying that his title be registered or that damages be awarded to him.

*Held* that the court below was right in dismissing the bill, because the plaintiff had been guilty of gross laches in neither registering his assignment nor giving the corporation any notice of his claim to ownership, and that all the trouble had resulted from his long and needless delay in doing what any prudent man would have done in reasonable time.

Argued Dec. 11, 1895. Appeal, No. 39, Nov. T., 1895, by plaintiff, from decree of C. P. Lehigh Co., June T., 1894, C. P. No. 1, dismissing bill in equity. Before RICE, P. J., WILLARD, BEAVER, REEDER, WICKHAM, MCCARTHY and ORLADY, JJ. Affirmed.

Exception to report of referee affirmed by court below, dismissing bill in equity praying the court to require the defendant association to note on their books the transfer of a cemetery lot to the plaintiff, and to give plaintiff certificate for said lot, and for general relief.

The facts sufficiently appear from the opinion of the court.

*Errors assigned*, (1–8) were in sustaining the referee's report; dismissing exceptions thereto; and in dismissing the bill.

*Harry C. Cope*, for appellant.—The appellant petitioned the learned court below for a reargument of the case, on the strength of the case of Tidewater Pipe Co. v. Kitchenman, 108 Pa. 630.

"It has been repeatedly decided that an assignee may sue a corporation for refusing to issue or transfer certificates of stock, although the assignment was not made on its books in pursuance of its charter and by-laws:" Angell & Ames on Corporations, sec. 354; Spelling on Priv. Corp., vol. 1, sec. 498.

"Laches is negligence or unreasonable delay in asserting or enforcing a right:" Rapalje & Lawrence Law Dict., vol. 2, p. 721.

"Laches is defined to be such neglect or omission to assert

a right, as taken in conjunction with lapse of time more or less great, and other circumstances causing prejudice to an adverse party, operates as a bar in a court of equity: " Am. & Eng. Ency. of Law, vol. 12, p. 533.

There was no occasion for appellant to assert his right, as long as he was unaware that it was in danger. As soon, however, as he learned that some one else claimed the cemetery lot, he asserted his right at once.

"In the absence of fraud or collusion, the corporation, by merely permitting registry, does not guarantee the vendor's title: " Am. & Eng. Ency. of Law, vol. 23, p. 673.

"The purchaser of an inchoate or defective title on its face, cannot claim to be placed in a better situation than the party of whom he purchased. It is only the purchaser of a title, perfect on its face, for a valuable consideration, who takes it discharged from every equity or claim of which he had no notice: " Reed v. Dickey, 2 Watts, 459; Chew v. Barnet, 11 S. & R. 389.

"A sale of stock binds not only the seller, but his heirs and personal representatives: " Spelling Priv. Corp., vol. 1, sec. 498, p. 542.

"No informalities or irregularities in the transfer can be set up by the transferer or his privates to defeat the title of his transferee: " Spelling Priv. Corp., vol. 1, sec. 498, p. 542, note 1.

The sale of this lot by Lillie Morris to M. S. Weidner conveyed to the latter no better title than she had, even if he had bought bona fide, for value, and without notice: Am. & Eng. Ency. of Law, vol. 21, p. 567; Peoples' Bank v. Kurtz, 99 Pa. 344; Linnard's App., 21 W. N. C. 40; Wood's App., 92 Pa. 379.

"It is the duty of a corporation which has issued a certificate for shares transferable on its books, not to permit a transfer to be executed upon the books or to issue a new certificate until the outstanding certificate has been surrendered: " Spelling Priv. Corp., vol. 1, sec. 497, p. 541, n. 1; Cook on Stockholders, sec. 402; Cook on Stockholders, vol. 1, sec. 359, n. 1, (3d ed.); Am. & Eng. Ency. of Law, vol. 23, p. 671.

"It may protect itself by requiring a bond of indemnity: " Cook on Stockholders, vol. 1, secs. 403 and 370, (3d ed.); Am. & Eng. Ency. of Law, vol. 23, p. 672; Bayard v. Bank, 52 Pa.

232; Livezy v. N. P. R. R. Co., 157 Pa. 75; Penna. R. R. Co.'s App., 86 Pa. 80.

" When the purchaser without certificates obtains registry on the books, the corporation is at fault, and is liable to the purchaser with the certificates. The corporation must either issue new certificates to the latter or pay damages: " Cook on Stockholders, sec. 435; Bank v. Lanier, 11 Wallace, 378; Smith v. Am. Coal Co., 7 Lans. 317; Cushman v. Thayer Man. Co., 76 N. Y. 365.

" It is well established that whenever a court of equity has jurisdiction, if the relief prayed for cannot for some reason be granted, a compensation in damages may be awarded in lieu thereof: " Masson's App., 70 Pa. 26.

" And where a defendant has put it out of his power to make a conveyance which otherwise the court would have decreed by conveying the premises to another, the plaintiff may elect to treat the purchase money received by him as the measure of damages: " Reeder v. Trullinger, 151 Pa. 293; Fessler's App., 75 Pa. 483.

" Or a court of equity will retain the bill and refer it to a master to assess the damages: " Woodcock v. Bennett, 1 Cowen, 711; Daniel's Chanc. Plead. & Prac., vol. 2, sec. 1080.

" Or the court will retain the bill and permit the plaintiff to amend the prayer of the bill, if necessary."

*Frank M. Trexler*, for appellee.—Plaintiff was bound to take notice of the by-laws: 2 Am. & Eng. Ency. of Law, 176; Bedford R. R. Co. v. Bowser, 48 Pa. 29.

This is not a stock transaction. The cases cited by counsel for appellant do not apply. At best they are but applicable to this present contention by way of analogy.

Courts of equity will apply the statute of limitation in bar where the plaintiff seeking relief has been slow in demanding his rights: Whetham v. R. R. Co., 9 Phila. Rep. 284.

In the case at issue twenty-eight years passed, and the appellant did not assert his right. Nothing can call a court of chancery into activity but conscience, good faith and reasonable diligence, and where these are wanting the court is passive and does nothing: Appeal of Saint Vincent's Orphan Asylum, 115 Pa. 157.

As between the members of the corporation, the primary evi-

160 JACOBS, Appellant, *v.* CEMETERY ASSOCIATION.

Arguments—Opinion of the Court.　　[1 Super. Ct.

dence of their relation is the records of the company, by which alone are the corporate rights determined : Bank of Commerce Appeal, 73 Pa. 59.

In conclusion : the appellant has been negligent; he has slept on his rights.

The Cemetery Association has not been negligent; it has acted with reasonable care and prudence.

OPINION BY WICKHAM, J., January 20, 1896 :

The Union Cemetery Association of Allentown, an unincorporated concern, was organized in the year 1854. It owned a tract of land laid out for cemetery purposes and divided into burial lots, and, so far as we can see, managed its affairs in the manner usually followed by quasi corporations. Its officers consisted of a president, secretary, treasurer, three managers and one trustee, each elected for one year. The articles of association, called " the constitution," provided inter alia as follows :

" Each and every person being the owner of one or more lots in the cemetery, shall, on subscribing to the articles of the association or by-laws, be a member thereof. And in case of the decease of such member, then the devisee or other legal representative of such decedent shall be entitled to all the rights and privileges, and be subject to all the restrictions and penalties to which members are or shall be subject.

" Each and every proprietor of one or more lots shall be entitled to a certificate of ownership for the same.

" The treasurer shall also procure a book in which an accurate map of the cemetery shall be made, and in which book he shall also enter the name of each lot holder with the number of such lot or lots as he or she may hold set opposite their names, and all transfers shall be made in the same, in the presence of the treasurer and trustee and signed by both of them.

" It shall be the duty of the trustee to hold the title papers of the property, to sign all certificates of lots, to be present at and witness, by his signature, all transfers of lots.

Transfers of lots shall only be made upon paying a fee of 25 cents for the use of the association, and in no case shall any transfer be made unless all arrearages are first paid, and to white persons only."

On September 2, 1861, Edward Denhard became the pro-

prietor of one of the burial lots, and a member of the association, receiving a certificate as follows:

" No 875.

" I hereby certify that Edward Denhard has this day paid the sum of six dollars for lot No. 239 in the Union Cemetery Association of Allentown, and I hereby sell, assign and transfer to the said Edward Denhard, his heirs and assigns, said lot to be held by him his heirs and assigns subject to the provisions of the constitution and by-laws of said association and amendments thereof.

" In witness whereof I have hereunto set my hand and seal this second day of September in the year of our Lord, one thousand eight hundred and sixty one.

" CHAS. KLINE, Trustee.   [SEAL.]

" Sealed and delivered in the presence of
  WILLIAM ECKERT."

Eckert at this time was the treasurer of the association. On the certificate appear the following indorsements:

" I do truly sell and assign unto Jacob Mohr lot No. 239 of the Union Cemetery Association of Allentown standing in my name on the book of said Association.

" Witness my hand and seal this Second day of September, A. D. 1861.

   " Deed of original drawing.

" EDWARD DENHARD.   [SEAL]

" Witnesses present:
 " WILLIAM ECKERT
 " SYLVESTER WEILER."

" For valuable consideration, I do hereby sell, assign and transfer to Aaron Jacobs, his heirs and assigns, the within specified cemetery lot No. 239, in the Union Cemetery Association, standing in my name on the book of said Association. And I hereby acknowledge the receipt of thirty dollars as the consideration aforesaid in full.

" Witness my hand and seal this tenth day of May, A. D. one thousand eight hundred and sixty-five.

" Witness present:    JACOB MOHR.   [SEAL]
 " REUBEN SIEGER."

The certificate, with its indorsements, was delivered by Mohr to Jacobs, as evidence of the purchase by the latter. No transfer was ever made on the books of the association before or after its incorporation. By the assignments, indorsed on the certificate, the plaintiff, however, became the equitable owner of the lot, or rather of a peculiar easement therein, subject to the rules, regulations and restrictions contained in the articles of association: Tidewater Pipe Co. v. Kitchenman, 108 Pa. 630. It may be added here, that at the time of his purchase his attention was called to the articles of association, a copy of which was present.

On May 1, 1871 the association was incorporated under the name it had previously borne and still bears.

Sometime prior to April 1, 1889, Edward Denhard died, leaving to survive him two sons and a daughter. It does not appear that his estate was indebted, or was administered upon. On. April 1, 1889, the sons transferred to their sister, Mrs. Lillie Morris, all their interest in the lot. The transfer was made in the regular way, on the corporation books, and Mrs. Morris was given a transfer slip, which under the rules and practice of the corporation, serves as a new certificate. The heirs, it may be here said, had the right to dispose of any interest their ancestor may have had in the lot at the time of his death, so long as his creditors made no complaint: Walworth v. Abel, 52 Pa. 370. All parties to this transfer seem to have acted under the belief that the title to the lot was in Edward Denhard when he died, and that the certificate was lost.

Mrs. Morris put up a sign on the lot offering it for sale, and on May 14, 1889, sold it to Mayberry L. Weidner. Weidner bought the lot bona fide, with no knowledge of the plaintiff's claim, and paid a full and valuable consideration. The transfer was made on the books of the defendant association and Weidner received the usual transfer slip. At the time there was nothing in the appearance of the lot to suggest any other ownership than that shown by the books of the corporation and its unincorporated predecessor. No one had been buried therein, no monument had been put up, and no improvements were visible save those made by the association.

Relying on his seemingly good title, Weidner went on and erected, on the lot, a monument, costing between three hundred and four hundred dollars.

In September, 1892, the plaintiff, for the first time, observed the monument. Inquiry revealed to him the fact, that Weidner claimed the lot under the title above set forth. The plaintiff then for the first time gave notice of his rights, and this was the first intimation thereof either defendant had from any source. On April 21, 1894, the plaintiff made a formal tender of the transfer fee to the association and demanded that a transfer to him, of the lot, should be noted in the proper book. His request was refused. He is now in court, asking for relief in the nature of specific performance.

It would seem grossly inequitable to aid him, as against Weidner. The latter was an innocent purchaser for value. The books of the association showed title in Mrs. Morris. He was not bound to inquire for outstanding certificates, whereof he had no notice. He was entitled to presume that the association had taken up and cancelled the Denhard certificate when it allowed the transfer to Mrs. Morris, and issued to her a new one. Moreover, he has, in reliance on his title and possession expended on the lot, at least four times its value.

Nor is the plaintiff entitled to recover the value of the lot from the association. Not until thirty-one years after the assignment to Mohr and over twenty-four years after his own purchase, did the plaintiff even notify the association that he had or claimed any interest in the lot. Had he at any time, before April, 1889, given such notice, the association, it is safe to assume, would have protected both him and itself, by allowing no transfer to be made to another. All the trouble results from his long and needless delay in doing what any prudent man would have done in reasonable time.

Whatever may be his rights at law, and, on that point, we intimate no opinion, he certainly has no standing in a court of equity.

The decree of the court below is affirmed, and the appellant ordered to pay the costs of the appeal.