**Hilsberg Estate**

*Bernard L. Frankel* and *Robert P. Frankel,* for accountant.

*Minturn T. Wright, 3rd,* for trustee.

*John F. Headly, Alexander S. Bauer, J. Pennington Straus, George N. Nofer, 2nd,* and *Samuel Fessenden,* for legatees.

*Judith J. Jamison, Irvin Stander, Louis Marion, Lois G. Forer* and *James L. Price,* for Commonwealth.

KLEIN, P. J., November 4, 1963.—Neya Hilsberg died on May 22, 1962, unmarried and without issue, leaving a will and codicil, which were admitted to probate on June 5, 1962, when letters testamentary were granted. Proof of advertisement of notice thereof was produced to the auditing judge.

By the will and codicil which were admitted to probate, dated, respectively, May 8, 1962, and May 21,

1962 (both within 30 days of the date of her death on May 22, 1962), testatrix bequeathed two legacies of $5,000, each, to the Settlement Music School of Philadelphia and Philadelphia Orchestra Pension Foundation; $10,000 to Philadelphia Orchestra Association for the purpose of commissioning Samuel Barber to compose a work to be performed by the Philadelphia Orchestra and dedicated to the memory of Alexander Hilsberg; $5,000 to the Reading Symphony Orchestra in memory of Alexander Hilsberg; and her residuary estate to Girard Trust Corn Exchange Bank, in trust to hold same as part of the Community Trust known as "The Philadelphia Foundation", for the education of young musicians, as hereinafter quoted *in extenso*, same to be known as the Alexander Hilsberg Fund.

By a prior will, dated August 27, 1961, whose execution was proved to the satisfaction of the auditing judge, testatrix had also bequeathed legacies of $5,000, each, to the Settlement Music School of Philadelphia and Philadelphia Orchestra Pension Foundation and her residuary estate to such organizations, meeting the qualifications therein prescribed, as her executors, in their sole discretion, should select, for the education of young musicians or in the furtherance of their careers, the details of which are also hereinafter quoted. Copies of all of the said wills and codicils are attached hereto.

Testatrix having died within thirty days of the dates of execution of the probated will of May 8, 1962, and codicil dated May 21, 1962, questions concerning the validity or validation under section 7 of the Wills Act of 1947 of the various charitable gifts contained therein were presented to the auditing judge at the audit.

Section 7 of the Wills Act of April 24, 1947, P. L. 89, which deals with modification of wills by circumstances, reads:

"(1) Death Within Thirty Days; Religious and Charitable Gifts. Any bequest or devise for religious

or charitable purposes included in a will or codicil executed within thirty days of the death of the testator shall be invalid unless all who would benefit by its invalidity agree that it shall be valid. The thirty-day period shall be so computed as to include the day on which the will or codicil is written and to exclude the day of death. Unless the testator directs otherwise, if such a will or codicil shall revoke or supersede a prior will or codicil executed at least thirty days before the testator's death, and not theretofore revoked or superseded and the original of which can be produced in legible condition, and if each instrument shall contain an identical gift for substantially the same religious or charitable purpose, the gift in the later will or codicil shall be valid; or if each instrument shall give for substantially the same religious or charitable purpose a cash legacy or a share of the residuary estate or a share of the same asset, payable immediately or subject to identical prior estates and conditions, the later gift shall be valid to the extent to which it shall not exceed the prior gift."

The will of August 27, 1961, and the probated will of May 8, 1962, both provided for pecuniary legacies of $5,000., each, to the Settlement Music School of Philadelphia and the Philadelphia Orchestra Pension Foundation. Since these gifts are identical in every respect there can be no doubt that they are both valid.

The principal question raised at the first audit held on February 6, 1963, was:

"Is the gift of the residue contained in the probated will dated May 8, 1962, an identical gift for substantially the same charitable purpose as the gift in the earlier will dated August 27th, 1961, and hence valid?"

The execution by decedent of the prior will bearing date August 27, 1961, was established to the complete satisfaction of the auditing judge, by the testimony of the three subscribing witnesses: Bertha Schoenbach,

Ruth L. Frankel and Bernard L. Frankel, who are well known to the court as persons of unquestioned probity and integrity.

Under the earlier will of August 27, 1961, the testatrix provided:

## "FIFTH

"I give, devise and bequeath the rest, residue and remainder of my estate, real and personal, to such one or more organizations then qualified under the Regulations of the Internal Revenue Code for tax-free gifts or bequests, and in such amounts or proportions, if more than one, as my Executors, in their sole and absolute discretion, shall select, with a specification that such bequests be used for the education of young musicians or in the furtherance of their careers."

The *FIFTH* Paragraph of the probated will of May 8, 1962, provides:

## "FIFTH

"I give, devise and bequeath the rest, residue and remainder of my estate, real and personal, to GIRARD TRUST CORN EXCHANGE BANK, IN TRUST, to hold as part of the Community Trust known as 'The Philadelphia Foundation', to be used and distributed for charitable or other public purposes in accordance with the Resolution and Declaration of Trust of the Directors of Girard Trust Corn Exchange Bank, adopted on the 11th of March, 1958, as such Declaration of Trust may, from time to time, be amended. The net income and the principal of the Trust Fund shall be used and applied within a period of twenty-five (25) years from the date of my death by the Distribution Committee of The Philadelphia Foundation for the following purposes:

"For the education of young musicians; to assist young musicians in the furtherance of their careers; to provide for the purchase of musical instruments for young musicians; to grant to schools, colleges and con-

servatories scholarships and fellowships for deserving young musicians and to provide for their living expenses; and to assist, in any way deemed to be desirable, young musicians and students of music in furthering their musical education and their musical careers.

"This bequest shall be known as the ALEXANDER HILSBERG FUND and all grants made by the Distribution Committee are to be made in memory of my late husband, Alexander Hilsberg.

"The amount of principal to be expended each year by the Distribution Committee will depend on the size of my estate, the requests for funds presented to The Philadelphia Foundation and my instructions set forth above, namely, that the entire principal be used within a period of twenty-five (25) years from the date of my death. I further suggest that the Distribution Committee of The Philadelphia Foundation confer with professional musicians and laymen interested in music in order to determine where and how funds can best be applied as herein provided."

The gift in the first will was to one or more organizations to be selected by the executors "to be used for the education of young musicians or in the furtherance of their careers." The gift in the probated will was not made directly to any organization but given in trust, the net income and principal to be used within a period of 25 years "for the education of young musicians", the gifts being not only "to grant to schools, colleges and conservatories, scholarships and fellowships for deserving young musicians and to provide for their living expenses", but also for direct gifts to young musicians in the furtherance of their careers by purchasing musical instruments and to assist them in other ways.

Are these identical gifts for substantially the same charitable purposes within the purview of section 7 of the Wills Act? In the opinion of the auditing judge,

the instant situation is controlled by McGuigen Estate, 388 Pa. 475 (1957), and the gift must be sustained.

In the McGuigen case, testatrix died within 30 days of making her will in 1955, which revoked all prior wills. Under a previous will made in 1953, she gave her residuary estate of approximately $141,000 to a trustee to pay the net income in perpetuity to Heart House "for the general purpose of this organization". In the 1955 will, she made an outright gift of her residuary estate of approximately $94,000 directly to the Heart House for its general purposes. In holding that the charitable gift was valid, Justice (now Chief Justice) Bell said, at page 481:

"Irrespective of any principle or canon of construction, it is clear that §7(1) of the Wills Act of 1947 should be liberally construed in order to effectuate the object of the Act which was to modify the prior harsh law and to promote justice: Martin Estate, 365 Pa. 280, 283, 74 A. 2d 120; Section 58 of the Statutory Construction Act of 1937, 46 PS 558, which by its terms includes future acts such as the Wills Act of 1947 and requires a liberal instead of a strict construction thereof in order 'to effect their objects and to promote justice'." See also Borden Estate, 1 Fiduc. Rep. 7 (1950).

Although the method of distribution of the fund in the present case is different in the two wills, a liberal construction leads to the inescapable conclusion that the basic charitable purpose is substantially the same in both instruments, i.e., the education of young musicians and the furtherance of their careers. We, therefore, rule that the gift of the residue in the probated will is valid.

With respect to the gifts of $10,000 to Philadelphia Orchestra Association and $5,000 to Reading Symphony Orchestra contained in the codicil dated May 21, 1962, the statement of proposed distribution filed with the auditing judge at the first audit stated:

"The charitable bequests to the Philadelphia Orchestra Association of $10,000.00 and the Reading Symphony Orchestra of Reading, Pennsylvania of $5,000.00, provided for in the codicil dated May 21, 1962, were not made in any prior will. The Accountant has been informed that the residuary legatee will not object to the payment of these two bequests and accordingly takes the position that they should be paid, pursuant to Section 7(1) of the Wills Act of 1947, which reads in part as follows:—'Any bequest or devise for religious or charitable purposes included in a will or codicil executed within thirty days of the death of the testator will be invalid *unless all who would benefit by its invalidity agree that it shall be valid.*' "

At the audit, Samuel Fessenden, of the law firm of Montgomery, Walker and Rhoads, entered his appearance for the Distribution Committee of The Philadelphia Foundation and consented to the payment of the two legacies. Although Girard was served with notice of the audit and the questions to be submitted to the court for decision, it did not appear at the audit and took no position with respect to the disputed questions.

Thus, obviously as the result of a misunderstanding of the relationship between the corporate fiduciary and the foundation, Girard, the trustee, ceded and surrendered its duties and responsibilities as trustee to the foundation, which undertook to exercise them.

The Philadelphia Foundation is a useful and highly regarded venture in community management of charitable trusts, which has been viewed with approval by the courts. In order to avoid serious complications which could endanger the usefulness of the foundation, it is imperative that its relationship with the corporate trustees be clearly understood.

As this is the first time that such a situation involving the Philadelphia Foundation has been before our court, the auditing judge will endeavor to clarify the

status of the foundation vis-a-vis the corporate trustees with which it is affiliated.

The Philadelphia Foundation is a permanent agency, formed jointly by the banks and trust companies of the Philadelphia area, to distribute funds placed in their hands for charitable, scientific, cultural and educational purposes. It is a multiple-trustee community trust similar to those being successfully operated in New York, Chicago, San Francisco, Pittsburgh, Cleveland and about 150 other cities in the United States.

Its purpose is to make available to persons of charitable intent a permanent, yet flexible means of carrying out their objectives and perpetuating their gifts in spite of changing conditions from generation to generation. A donor may, either by gift or by will, name the foundation as *beneficiary* and designate a bank of his own choice as *trustee*. Each bank, as trustee, invests and administers its own trusts in accordance with the directions given by the donor in his trust agrement or in his will.

The donor may direct that income or principal be paid by the trustee to the foundation without any restrictions as to its use. In such cases, the foundation selects beneficiaries in accordance with its own knowledge of the total funds available and the needs of the community from time to time. In other cases, the donor may designate a particular charitable organization to which he wants the foundation to distribute his funds. If an agency or the need for its services cease to exist, the foundation, without complicated legal proceedings, can channel the funds to another agency or to another use related to the original purpose of the donor. The donor may, if he so desires, select the type of charitable activity he wants to support, but direct the foundation to select the beneficiary organizations.

The plan provides for the appointment of a distribution committee, consisting of seven outstanding citi-

zens, who serve without compensation for terms of five years each.

The multiple-trustee community trust plan is predicated upon the concept that a corporate fiduciary, experienced in financial matters and skilled in the administration of trust estates, shall act as trustee and an organization composed of outstanding civic leaders, serving without pay, shall act as distributing agent of the proceeds of the trust.

In the present case, although the Distribution Committee of the Philadelphia Foundation has been designated to select the persons and institutions to whom the income and the principal of the trust estate created by testatrix are to be distributed, it was not named trustee and has no rights, powers or duties as such. Girard Trust Corn Exchange Bank is the trustee designated by testatrix. It, and it alone, is charged with the responsibility of administering the trust created in her will.

Fortunately for all concerned this misunderstanding was corrected at the later audit and Girard was represented by able counsel who vigorously supported the position it was obligated to espouse, as trustee. Although the disputed questions were ultimately compromised, with the approval of the auditing judge, in view of the apparent misunderstanding existing with respect to the problems involved, the auditing judge will briefly discuss these matters.

At the first audit the contention was made that, by reason of the fact that notice had been given to Girard, as trustee, that the Philadelphia Orchestra Association and the Reading Sympony Orchestra would claim that their legacies of $10,000 and $5,000, respectively, were valid, the said legacies were validated because the trustee did not appear to object to the claim.

This is completely without merit. The pertinent language of section 7 of the Wills Act of 1947 is:

"Any bequest or devise for . . . charitable purposes included in a will or codicil executed within thirty days of the death of the testator shall be invalid *unless all who would benefit by its invalidity agree that it shall be valid...*" (Italics ours.)

The crucial word in the statute is "agree". This is a common word having a well defined meaning. Funk & Wagnalls Practical Standard Dictionary defines it as follows:

"1. To come into or be in harmony; be of one mind; concur.

"2. To consent, assent. 3. To contract or promise formally."

There is a vast difference between agreeing to the payment of a void legacy and failing to object thereto. The former requires an affirmative act; the latter is merely maintaining a negative position. We unhesitatingly conclude that in the present case, the failure of the Girard to appear and object to validation of the two legacies was not equivalent to an agreement. The burden to secure an affirmative agreement is at all times upon the person who seeks validation of a void gift. He cannot transfer this burden to the person who would benefit by the premature death of the testator. In fact, as a matter of practical administration, a prudent and careful personal representative should insist that any such agreement be clearly and unequivocally set forth in a written instrument.

But let us assume for the sake of argument, and for this purpose only, that Girard, as residuary legatee, had actually executed a writing agreeing to the validation of the invalid legacies.

Such an agreement would have been wholly unenforceable. A trustee is in duty bound to defend the trust it is administering: Battles Estate, 379 Pa. 140, 142 (1954); Martin Estate, 349 Pa. 255, 260 (1944);

Lowe's Estate, 326 Pa. 375, 384 (1937). This duty is present whether the trust is a private one or charitable in nature as in the present case: Restatement of Trusts, §379. The trustee is obliged to administer the trust estate conscientiously and with diligence in accordance with the directions contained in the trust instrument and solely in the interests of the beneficiaries designated therein. He must take all reasonable steps to acquire and maintain exclusive control over the trust property: Restatement of Trusts, §175. He is charged with responsibility for preservation of the fund, which entails a duty to take a firm stand, defending valid testamentary directions and opposing invalid directions.

At the continued audit, which was held on May 16, 1963, John F. Headley and James D. Crawford appeared for the Philadelphia Orchestra Association and Alexander P. Bauer appeared for the Reading Symphony Orchestra. They contended that the gifts to the two orchestra associations were valid for two reasons: (1) That the gifts were not for charitable purposes; and (2) that they could be satisfied out of the proceeds of the real estate owned by decedent, located in the State of Maine [1] which has no provision in its law similar to the provision in the Pennsylvania statute, invalidating gifts for religious or charitable purposes in testamentary writings executed within 30 days of death. Minturn T. Wright, 3rd, appeared in behalf of Girard, as trustee, in opposition to the position taken by the two legacies.

Oral argument was heard and extensive briefs were filed by counsel for both sides.

Following the argument, at a continued audit held

---

[1] Included on page 2 of the account among the assets of principal, personalty, is the sum of $21,000, stated to be "Amount received from sale of Real Estate in Camden, Maine."

on October 7, 1963, a stipulation was submitted to the court, approved by counsel for all parties in interest, including James L. Price, representing the Attorney General, for the Commonwealth of Pennsylvania as parens patriae in charitable trusts. Under the provisions of this stipulation, it was agreed that:

"1. In satisfaction of the gift in article FIRST of the Codicil:

(a) five thousand dollars ($5,000) shall be awarded to the Philadelphia Orchestra Association for the purpose stated in article FIRST of the Codicil, Samuel Barber having agreed to accept the commission stated therein; and

(b) one thousand dollars ($1,000) shall be awarded to the Philadelphia Orchestra Association for its general purposes.

"2. In satisfaction of the gift in article SECOND of the Codicil, twenty-five hundred dollars ($2,500) shall be awarded to the Reading Symphony Orchestra of Reading, Pennsylvania, in memory of Alexander Hilsberg.

"3. Twelve hundred and fifty dollars ($1,250) shall be paid to Dechert, Price & Rhoads, counsel for Girard Trust Corn Exchange Bank, and treated as an additional disbursement in the Principal Personalty account of the accountant."

Although the auditing judge has pointed out previously in this adjudication that a trustee cannot surrender any of the rights or property of the trust estate, it is equally clear that under the provisions of section 945 of the Fiduciaries Act of April 18, 1949, P. L. 512, it has the right with the approval of the court "to compromise or settle any question of dispute concerning the validity or construction of any will or trust instrument, or the distribution of all or any part of any trust, or any controversy affecting any trust."

In the opinion of the auditing judge, this is a proper case for settlement under the existing circumstances. Moreover, the terms of the proposed settlement appear to be fair and reasonable. The settlement is accordingly approved. . . .

And now, November 4, 1963, the account is confirmed nisi.