J-A22024-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: ESTATE OF JOHN J. LUCIANI, SR., DECEASED | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: CHRISTOPHER LUCIANI | |
| | No. 293 MDA 2016 |

Appeal from the Order Entered January 21, 2016
In the Court of Common Pleas of Lackawanna County
Orphans' Court at No(s): 35-02-683

BEFORE:  GANTMAN, P.J., PANELLA, J., and JENKINS, J.

MEMORANDUM BY PANELLA, J.                **FILED NOVEMBER 21, 2016**

Appellant, Christopher Luciani, appeals from the order denying his objections to and approving the first and final account of his father, John J. Luciani, Sr.'s ("Father"), federal estate tax credit shelter trust. Christopher argues that the orphans' court erred in concluding that the distribution of the entirety of the trust principal to his mother, Ann Luciani ("Mother"), during her lifetime violated the terms of the trust. After careful review, we conclude that the orphans' court's findings and conclusions are well supported by the record, and therefore affirm.

For the purposes of this appeal, the following facts are undisputed. In 1993, Father and Mother executed coincident, reciprocal wills and revocable trusts. The wills, in relevant part, bequeathed the majority of the value of

their property to their respective revocable trusts. The trusts, in turn, provided for the immediate disbursement to a surviving spouse of "the smallest amount of principal needed to reduce the Federal Estate Tax falling due because of the death of Settlor to the lowest possible figure." At the time, the federal estate tax provided for an exemption for the first $600,000 of value passed through an estate to a non-spouse. The remaining assets would stay in a "Residuary Trust."

The Residuary Trust provided that the net income of the trust could be disbursed, at the sole discretion of the trustees, to the surviving spouse or to any of the couple's four children. Of primary importance to this case, the Residuary Trust also provided for the disbursement of the principal of the trust, under the trustees' sole discretion, for the "health, education, support or maintenance" of the surviving spouse or any of the couple's four children.

Furthermore, two of the couple's children, Jill Mooty and Christopher, were appointed trustees of the Residuary Trust. Both children were involved in running the family business of Concrete Step Units ("CSU"). Mooty, an accountant, assisted with bookkeeping and tax preparation, while Christopher was heavily involved in the day-to-day operations of the business.

In 2001, the federal government enacted sweeping tax reform, including a proposed phase-out of the federal estate tax. Pursuant to the reform, the estate tax exemption was raised to $1,000,000 in 2002, and

escalating yearly thereafter until the estate tax would be eliminated in 2010. Ultimately, the federal estate tax was reinstated with a significantly higher exemption that would have covered the entirety of Father's estate.

Father passed away in 2002, and Mother survived him. According to estate administration documents, the estate bequeathed $1,156,084 to Father's revocable credit shelter trust.[1] The trust retained $942,000 worth of stock in two companies, CSU and Wayne Crushed Stone ("WCS"), in the Residuary Trust. The trust transferred a brokerage account valued at $164,084 and $25,000 each of CSU and WCS stock to Mother. These distributions were memorialized in a family settlement agreement that Christopher signed.

Pursuant to distributions in 2003 and 2006, the Residuary Trust's trustees transferred the entirety of the trust's principal to Mother. While Christopher testified that he did not remember signing to authorize these transfers, he did not testify that the signatures were forgeries.

Both parties to this appeal agree that in 2006, Mother amended her revocable trust agreement in a manner that modified the distribution

---

[1] The family settlement agreement indicates that only $942,000 was bequeathed to the trust, with $214,084 being bequeathed directly to Mother. A family settlement agreement can be an informal arrangement amongst the heirs, and can be inferred from circumstances. *See Walworth v. Abel*, 52 Pa. 370, 373 (1866). Thus, the fact that the written agreement does not reflect the precise accounting of the estate, but rather the ultimate distributions, does not affect the relevant circumstances of this appeal.

scheme to the four children. However, this document is not in the certified or reproduced record. The parties agree that the disposition of assets contained in this amendment was different from that contained in the Residuary Trust. *See* Appellant's Brief, at 16; Appellee's Brief, at 10. The only evidence regarding the content of Mother's 2006 amended trust agreement came from the scrivener, Attorney Nicholas Tellie:

> In 2006 mom comes back to the office and amends her trust and what she amended was the allocation portion. So she said in her trust, in the 2006 amendment, that upon my death the real estate of Concrete Steps would be transferred by direct or subject to reorganization, tax free exchanges and so forth, to Wayne Crushed Stone. Then you left the operating company of Concrete Steps and that would still be distributed to Christopher and Nancy, the daughter. The remaining assets instead of just being shared with Jill and John Jr. would be shared with all four. That's how she reallocated it. Why, again, it was numbers, valuations that Jill was reviewing so she signed that I think in June or something like that. That wouldn't work because you had half of the shares in her husband John's trust that said the real estate wasn't going to be transferred – just Christopher and Nancy would receive Concrete Steps with the real estate, and the two children remaining, Jill and John Jr., would receive the remaining assets. Her amendment, which earned half the stock, was going to go differently. Her amendment she wanted to allocate it with Concrete Steps removing the real estate to Wayne Crushed Stone. Still Christopher and Nancy receiving the stock and the four children sharing. Well, that wouldn't work. You got two trustees over here, and four trustees over here with different – so the only logical and reasonable thing to do was to transfer the assets from the estate of the father to the mother, which would effectuate her reallocation, which was just – all four children were involved it was just a different reallocation. How the numbers worked out. I'm assuming Jill did it with values equal or similar. That was the background in the 2006 distribution.

N.T., 10/27/15, at 75-76.

Mother passed away in April 2012. Shortly thereafter, Christopher's brother, John Luciani, Jr., filed a petition requesting that Nancy Nealon, as *de facto* trustee, and Christopher and Mooty, as named trustees, file a first and final account of the Residuary Trust. On October 24, 2012, Mooty filed a first and final account of the Residuary Trust, indicating that the principal of the trust had been transferred to Mother as set forth above.

Both Christopher and John, Jr. objected to the account, asserting that the transfers to Mother were not authorized under the terms of the Residuary Trust. Mooty passed away in February 2013, and her estate was substituted for her as a party. Prior to her death, Mooty was deposed.

In 2015, the orphans' court held a hearing on Christopher's and John, Jr.'s objections to the account. At the close of the objectors' case-in-chief, the orphans' court dismissed Nealon from the case, as no evidence had been presented that she had acted as a trustee. Mooty's estate presented the deposition testimony of Mooty and the testimony of Attorney Tellie as both a factual and expert witness. On January 19, 2016, the orphans' court denied Christopher's and John, Jr.'s objections. Christopher then filed this timely appeal. John, Jr. did not file an appeal and is no longer a party to this action.

On appeal, Christopher raises three issues for our review. Issues one and three are essentially identical, in that Christopher argues that the distributions from the Residuary Trust were not appropriate under the terms

of the Residuary Trust. Our standard in reviewing decisions of the orphans'

court is as follows:

> The findings of a judge of the orphans' court division, sitting without a jury, must be accorded the same weight and effect as the verdict of a jury, and will not be reversed by an appellate court in the absence of an abuse of discretion or a lack of evidentiary support. This rule is particularly applicable to findings of fact which are predicated upon the credibility of the witnesses, whom the judge has had the opportunity to hear and observe, and upon the weight given to their testimony. In reviewing the orphans' court's findings, our task is to ensure that the record is free from legal error and to determine if the orphans' court's findings are supported by competent and adequate evidence and are not predicated upon capricious disbelief of competent and credible evidence.

> When the trial court has come to a conclusion through the exercise of its discretion, the party complaining on appeal has a heavy burden. It is not sufficient to persuade the appellate court that it might have reached a different conclusion if, in the first place, charged with the duty imposed on the court below; it is necessary to go further and show an abuse of the discretionary power. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence [of] record, discretion is abused. A conclusion or judgment constitutes an abuse of discretion if it is so lacking in support as to be clearly erroneous.

> We are not constrained to give the same level of deference to the orphans' court's resulting legal conclusions as we are to its credibility determinations. We will reverse any decree based on palpably wrong or clearly inapplicable rules of law. Moreover, we are not bound by the chancellor's findings of fact if there has been an abuse of discretion, a capricious disregard of evidence, or a lack of evidentiary support on the record. If the lack of evidentiary support is apparent, reviewing tribunals have the power to draw their own inferences and make their own deductions from facts and conclusions of law. Nevertheless, we will not lightly find reversible error and will reverse an orphans' court decree only if the orphans' court applied an incorrect rule

of law or reached its decision on the basis of factual conclusions unsupported by the record.

*In re Paxson Trust I*, 893 A.2d 99, 112-113 (Pa. Super. 2006) (citations and quotation marks omitted; brackets in original).

Christopher's challenge to the account of the Residuary Trust requires us to construe its terms. "The touchstone in construing a trust is the settlor's intent; the language of the trust deed itself is the best and controlling evidence of such intent." *In re Estate of Devine*, 910 A.2d 699, 703 (Pa. Super. 2006) (citation omitted).

The Residuary Trust explicitly set forth Father's intent: "The intent is to treat the children of settlor equally after taking into consideration all of the values. … The intent is that each child shall receive equal values." Revocable Trust Agreement, 3/9/93, at 5-6. Furthermore, the Residuary Trust provided that the trustees, within their discretion, could transfer the principal of the Residuary Trust to Mother or any of the children for purposes of "health, education, support or maintenance." *Id*., at 4. Thus, the Residuary Trust gave the trustees significant discretion in how to distribute the principal of the trust, so long as the distribution was done in a manner that ultimately treated Christopher, John, Jr., Nealon, and Mooty equally.

Based upon the certified record before us, we cannot say that the children were ultimately treated disparately. In fact, we cannot even ascertain how the principal of the Residuary Trust was ultimately distributed.

Mother's trust agreement is not in the record. Nor is any accounting of her estate or trust.

While it is possible that the distribution to Mother of the entirety of the principal of the Residuary Trust, for the undisputed purpose of estate planning, was not entirely authorized by the trust, that conclusion cannot be reached without a finding that Mother's estate plan was not in accordance with the stated intent of the Residuary Trust. Furthermore, there is no allegation, and no proof, that Mother dissipated these assets in a manner that defeated the Residuary Trust's purposes.

The Residuary Trust at issue here was an estate-planning tool, with a primary goal of reducing of the impact of the federal estate tax. By 2002, that concern had been largely mooted by changes in the law. Beyond that, the trust explicitly and clearly stated its intent to treat the children equally after the death of Mother. The certified record contains no evidence that Mother's *inter vivos* gifts, estate, and trust distributions did not treat the children equally.[2]  Therefore, Christopher did not establish his right to relief, and is due no relief on this issue on appeal.

_____

[2] There is some evidence in the record that Mother's changes were motivated by the discovery of valuable mineral rights in land transferred to Christopher and John, Jr., thereby causing an imbalance in the values of the shares to be distributed to the children by the Residuary Trust. **See** N.T., Deposition of Jill Mooty, 1/16/13, at 33. However, it is unclear who transferred this property to the brothers, or whether this transfer was an *inter vivos* gift or a distribution from an estate or trust. Furthermore, it is not
*(Footnote Continued Next Page)*

In his remaining issue, Christopher contends that the orphans' court erred in permitting Attorney Tellie to testify to Father's intent in construing the Residuary Trust. We conclude that this issue is moot, as we have already determined, referring to only the trust agreement itself, that Christopher is not entitled to relief on appeal.

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/21/2016

---

*(Footnote Continued)*

even clear that this was a factor that motivated Mother's changes. Under these circumstances, we cannot conclude that this passing reference is capable of supporting any finding relevant to this matter.