## Milgrom Estate

*Meyer Love*, for petitioner.
*Robert Levin* and *Levin, Levin & Levin*, contra.

KLEIN, P. J., February 15, 1963.—The present effort to compel Elsie Shmukler to proceed with the contest she has instituted to prevent the probate of the writing which has been offered as her mother's will is but another move in the acrimonious and protracted litigation between her and her brothers with respect to the estates of their parents.

The father, Juda Milgrom, died October 15, 1958. He left a will dividing his estate, in five equal shares, among his wife, Ethel, and their four children: Samuel, Herman, Nathan and Elsie Shmukler. Samuel was named executor. Letters testamentary were issued to him on October 28, 1958. The widow filed an election to take against the will as a result of which her share was increased to a third and the share of each of the children reduced to a sixth.

On February 3, 1961, upon Elsie Shmukler's petition a citation was issued directed to Samuel, the executor, to show cause why he should not be removed, the letters vacated and he be ordered to file an account. Preliminary objections were filed and dismissed. This was followed by an answer containing new matter and a reply. On November 21, 1961, a decree was entered ordering the executor to file an account within 60 days.

On June 2, 1961, another citation was issued directed to Samuel and his brother, Herman, to produce books, papers and records of an alleged partnership with decedent. An answer was filed. A decree was

entered referring this matter "to the Judge who will audit the account when filed for hearing and determination."

An account was filed on February 26, 1962, which was more than one year after the citation was issued and more than three years after the date of decedent's death. This account came on for audit before Judge Saylor. It is a voluminous document consisting of 32 pages, with 140 pages of explanatory data attached.

Counsel for Elsie Shmukler filed exceptions to the account which were so numerous and complex that they filled 20 typewritten pages and were accompanied by an explanatory document which covers five single-space, typewritten pages, designated "Index and Classification of Exceptions."

Elsie charges her three brothers, and particularly Samuel, the executor, with many acts of fraud, deceit and overreaching. She alleges that assets belonging to her father were improperly taken from him, that the extent of his interests in certain partnerships was misstated and that, generally, a considerable portion of decedent's assets was fraudulently misappropriated. She also charges that the accountant "by fraud and undue influence" procured from his mother, Ethel Milgrom, certain of her assets and improperly induced her to elect to take against her husband's will and to execute the will which has been offered for probate as part of their fraudulent plans.

Because the account was improperly stated and because, further, of the extreme complexity of the problem, Judge Saylor, at the request of Mr. Levin, counsel for Elsie Shmukler, with the concurrence of Mr. Love, counsel for the accountant, entered a decree on May 21, 1962, appointing Laventhol and Krekstein, Certified Public Accountants, to examine the books of the alleged partnership and of decedent and to restate the account filed by the executor. Their report and re-

stated account has not yet been received by the auditing judge.

Ethel Milgrom, the mother, died December 22, 1961, leaving a will giving substantially her entire estate to her three sons and specifically stating that she made no provisions for her daughter, Elsie, and her husband, "for reasons well known to them." Samuel was also named executor in this will. He offered the will for probate on January 3, 1962, but was confronted with a caveat, filed by Elsie, which challenges the validity of the will, alleging that it was obtained by fraud and undue influence at a time when decedent was not of sound mind.

Meyer Love, counsel for the proponents, requested the register of wills to advance the date for hearing the contest. A hearing was held before the register on June 27, 1962, at which time the situation was discussed informally but no testimony of witnesses was taken.

No formal action was taken by the register and no decree was entered by him. However, on September 12, 1962, he wrote to counsel stating that he had "decided to take no action upon the petition for letters and caveat . . . until a disposition is made of the questions raised in the Orphans' Court by the contesting parties in the Juda Milgrom Estate."

On October 25, 1962, upon petition filed by Samuel, Herman and Nathan Milgrom, a citation issued directed to their sister, Elsie Shmukler, to show cause why the register of wills should not be directed to certify the entire record to the orphans' court for determination. An answer was filed by Elsie, resisting the certification and containing new matter. Preliminary objections were then filed, which are now before us for disposition.

Section 207 of the Register of Wills Act of June 28, 1951, P. L. 638, which deals with certification of rec-

ords from the register of wills to the orphans' court, provides:

"Whenever a caveat shall be filed or a dispute shall arise before the register concerning the probate of a will, the grant of letters or the performance of any other function by the register, he may certify, or the court upon petition of any party in interest may direct the register at any stage of the proceeding to certify, the entire record to the court, which shall proceed to a determination of the issue in dispute. . ."

Certification of a case from the register of wills to the orphans' court is to be exercised with caution: Partridge-Remick, Pennsylvania Orphans' Court Practice, §4.04(c), p. 127 et seq. However, if the register is confronted with an unusually difficult or complicated question a certification may be directed.

In McQuade Estate, 80 D. & C. 557 (1952), Jones, P. J. (now Mr. Justice Jones), said at page 562:

'The determination whether or not certification should be directed by the orphans' court is a matter solely within the discretion of the court. The use of the word 'may' in section 207 of the Register of Wills Act of 1951, supra, clearly indicates such a conclusion."

Justice Jones said further at page 564:

"Before this court will feel justified in directing certification of the record by the register there must be presented to it some evidence of an unusual, a complicated or an extraordinary situation; otherwise, the orphans' court will be turned into a court of probate and it will be usurping duties ordinarily and regularly entrusted by statute to the register."

See also Ulmer Estate, 80 D. & C. 359 (1952); Greenawalt's Estate, 58 D. & C. 487 (1946).

In Randal's Estate, 20 D. & C. 574 (1934), the paper offered for probate was a purported copy of an alleged lost will, asserted to have been executed by mark, to

which caveats had been filed raising issues as to testator's mental capacity and undue influence. Judge Holland, in directing the certification, said at page 576:

"We are of the opinion, however, that in the case now before us there are sufficiently difficult, unusual, and probably complicated phases for consideration to warrant directing a certification of the whole record to this court. We will have here for our consideration the most unusual type of probate conceivable, that is the proof of and probate of a lost will, involving many intricate and difficult questions of evidence and questions of law. . ."

We believe the issues in the present case to be so difficult, unusual and complicated as to warrant our directing the register to certify the record to us.

The business affairs of Juda Milgrom were most involved. The account which has been filed indicates that decedent left an estate of approximately $300,000, composed of real estate, mortgages, stocks, interests in partnerships and other items of property. The objections filed to the account are so numerous and they raise so many intricate questions of law and fact as to make the auditing judge's task in attempting to bring order to these proceedings a veritable nightmare. Moreover, it appears from the daughter's charges that substantially all of the assets in the mother's estate will flow from her husband's estate. She also maintains that many of the questions raised in the proceedings before the auditing judge are also involved in the will contest challenging the validity of her mother's will. In the new matter set forth in her answer to the petition for certification, she avers:

"1. Substantially the identical questions involved in the instant will contest are also involved in a certain petition filed by Elsie Shmukler (the respondent in these proceedings) in your Honorable Court in the Estate of Juda Milgrom, deceased, No. 2312 of 1959

for a citation to compel Samuel Milgrom (who is one of the proponents in the will involved in these proceedings) to file his account as executor of the estate of Juda Milgrom, deceased and also to show cause why he should not be removed from his office as executor. Said petition was based in part on alleged fraud and undue influence perpetrated on the aforesaid Ethel Milgrom by the said Samuel Milgrom and his brothers, Herman Milgrom and Nathan Milgrom, (the three petitioners in the instant case) . . ."

The register of wills would obviously be under a great disadvantage if the same issues which have been raised before him are also being considered by an auditing judge in the orphans' court. Common sense suggests that the orderly disposition of the many diverse questions raised by the daughter would be facilitated and accelerated if all of the proceedings in the estates of both parents were under the personal supervision of a single orphans' court judge.

In our opinion, the circumstances of this case constitute precisely the kind of situation the legislature contemplated when section 207 of the Register of Wills Act of 1951 was enacted. It seems reasonably certain that, regardless of how the register might decide the contest challenging the will of Ethel Milgrom, an appeal would be taken, in which event the entire question would have to be considered *de novo* by this court. It would serve no useful purpose, under the unusual circumstances of this case, to permit this waste of time and expense and needless duplication of effort.

Elsie Shmukler's principal concern appears to be that she will be seriously prejudiced in the prosecution of the will contest, if she is forced to trial before the auditors file their report and before she is given a reasonable opportunity to study this report and restated account and, if necessary, to examine witnesses with respect thereto. We are fully confident that, al-

though Judge Saylor will attempt to dispose of these proceedings with dispatch and celerity, he will make every effort to safeguard fully her legal rights, as well as those of all of the other litigants.

We, therefore, enter the following

### Decree

And now, February 15, 1963, Honorable John E. Walsh, the Register of Wills, is directed to certify the entire record in the estate of Ethel Milgrom, deceased, to this court, pursuant to the provisions of section 207 of the Register of Wills Act of 1951.

The matter is, accordingly, referred to Saylor, J., for his consideration and determination.