J-A16004-24

2024 PA Super 211

| | | |
|---|---|---|
| IN RE: ESTATE OF DOROTHY GRIGG, DECEASED | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: RONALD GRIGG | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 862 WDA 2023 |

Appeal from the Order Entered June 28, 2023
In the Court of Common Pleas of Cambria County Orphans' Court at
No(s):  11-22-686

BEFORE:  KUNSELMAN, J., MURRAY, J., and McLAUGHLIN, J.

OPINION BY KUNSELMAN, J.:                    **FILED: September 16, 2024**

Ronald Grigg appeals from the orphans' court order entered on June 28, 2023, that declares the purported Last Will and Testament of Dorothy Grigg dated January 5, 2022, to be of no legal effect due to a forged signature.  The order further directs four other heirs of Dorothy Grigg be permitted to be sworn in as administrators of her estate.  Ronald Grigg challenges the weight of the evidence, an evidentiary ruling, and the procedure followed below. Upon review, we affirm.

Dorothy Grigg passed away on February 1, 2022, from a pulmonary embolism and COVID-19, at age 81.  She was survived by her husband, Charles Grigg, three sons (Ronald, David and Brian) and three daughters (Christi Maliepaard, Leah Kelley and Sharon Murton).

On July 12, 2022, four of Dorothy's children (Christi, Leah, David and Sharon, "the Petitioners") submitted a petition to the Register of Wills in

Cambria County and requested letters of administration, claiming their mother died intestate.

On July 18, 2022, Charles Grigg filed objections to the petition with the Register of Wills. He claimed that his wife had a will and requested, pursuant to the will, that letters testamentary be issued to Ronald Grigg. The next day, Ronald Grigg filed similar objections and requested the same relief.

According to the orphans' court opinion, the Register of Wills did not act on the petition or objections.[1] Instead, on July 20, 2022, the orphans' court issued an order to schedule a status conference. The court held the status conference on August 26, 2022, to discuss who would be appointed administrator/executor of the Dorothy Grigg Estate. Over the next several months, the court issued various orders regarding subpoenas, discovery requests and objections thereto. Ultimately, the orphans' court held an evidentiary hearing on May 3, 2023.

At the hearing, each side presented the testimony of a qualified handwriting expert. Petitioners presented the testimony of Khody Detwiler. Respondents, Ronald and Charles Grigg, presented the testimony of Michelle

---

[1] The original petition of July 12, 2022, is not part of the certified record. Therefore, we cannot tell whether the Register of Wills signed the petition to issue letters of administration to the Petitioners. We could dismiss this appeal on that basis alone as it is Appellant's duty to ensure the certified record is complete. Pa. R.A.P. 1931; *Commonwealth v. Wint*, 730 A.2d 965 (Pa. Super. 1999). However, because the parties and the orphans' court proceeded as if no action had been taken on this petition, we will proceed accordingly and decline to dismiss the appeal.

Dresbold. Additionally, three of Dorothy's children, Sharon, Charles, and Ronald, testified about the state of Dorothy's health prior to her death.[2] Ronald also testified that, as a former attorney, he drafted the will for his mother, and he saw her sign it. No witnesses verified Dorothy's signature when the will was allegedly executed; Charles was out of town at the time, and Ronald did not sign it as a subscribing witness. After the hearing, both sides submitted memoranda to the Court.

On June 28, 2023, the court issued its Findings and Opinion, and concluded as follows:

> The [c]ourt finds the testimony of Khody Detwiler to be clear, direct, precise, and conveys that the purported signature on the will dated January 5, 2022 is not, in fact, the signature of Dorothy Grigg.
>
> The case of **In re Cline's Estate**, 252 A 2d. 657 ([Pa.] 1969) sets forth the applicable law that the determinable fact for this [c]ourt is the credibility of the fact witnesses. . . . [T]he credibility of witnesses was the major issue for the [c]ourt, plus the extensive educational and experience of Petitioners' handwriting expert.

Orphans' Court Opinion, 6/28/23, at 6-7.

As noted above, the orphans' court found the purported Last Will and Testament of Dorothy Grigg dated January 5, 2022, to be of no legal effect

---

[2] Although affidavits of other witnesses were filed in the Register of Wills, the orphans' court did not consider them in its determination. See Orphans' Court Opinion, 6/28/23, at 4 (noting that, although under oath, the affidavits were out-of-court statements not subject to cross-examination and offered to prove the truth of the facts asserted in violation of the Rules of Evidence 801 and 802 as hearsay).

due to a forged signature. As such, the court ordered that the Petitioners be permitted to be sworn in as administrators of the Estate of Dorothy Grigg.

On July 25, 2023, Ronald Grigg filed a notice of appeal.[3] The orphans' court entered an order on August 8, 2023, requiring Ronald to file and serve upon the court a concise statement of errors complained of on appeal, in compliance with Pennsylvania Rule of Appellate Procedure 1925(b). On August 21, 2023, he complied.

Ronald raises the following four issues on appeal:

1. Whether the orphans' court committed an error of law by giving any weight to opinion evidence of an expert by failing to follow the standard set forth *In re Cline's Estate*, 252 A.2d 657 ([Pa.] 1969), when there was positive evidence of a fact witness who observed the Decedent, Dorothy Grigg, execute the Last Will and Testament dated January 5, 2022?

2. Whether the orphans' court committed an error of law and/or abused its discretion when the orphans' court capriciously disbelieved the uncontradicted testimony of the fact witness who observed the Decedent execute the Last Will and Testament dated January 5, 2022?

3. Whether the orphans' court committed an error of law by denying the introduction of evidence of the Decedent's testamentary intent?

4. Whether the orphans' court, where the [Petitioners] did not file a caveat, abused its discretion when it relied upon the [Petitioners'] handwriting expert when the [Petitioners] failed to present any probative facts or circumstances to overcome the testimony of the fact witness who observed the Decedent execute the Last Will and Testament dated January 5, 2022?

---

[3] Charles Grigg did not file a notice of appeal, but he did file an appellate brief essentially alleging the same claims as Ronald.

Ronald's Brief at 2-3 (excessive capitalization removed).

Ronald's first two issues challenge the orphans' court's assessment of the evidence in determining that the signature was forged. First, he claims that because he witnessed his mother sign the will, the court should not have given any weight to the handwriting experts. Additionally, he claims the orphans' court capriciously disregarded his testimony that he witnessed his mother sign the will.

When reviewing a determination concerning the validity of a purportedly forged will, the Pennsylvania Supreme Court outlined certain well-settled principles for appellate courts to follow:

> (a) the findings of fact by the chancellor, approved by a court *en banc*, have the weight and effect of a jury verdict and must be accepted at the appellate level unless such findings lack evidentiary support or unless the chancellor has capriciously disbelieved evidence or abused his discretion or committed an error of law;
>
> (b) one who relies upon forgery to challenge the validity of a will has the burden of proving such forgery in a clear, direct, precise and convincing manner;
>
> (c) the opinion evidence of experts in cases of forgery is of little weight and cannot prevail against "positive evidence of actual facts by witnesses whom the Chancellor considers credible;"
>
> (d) the testimony of handwriting experts that a will offered for probate is a forgery corroborated by probative facts and circumstances may be sufficient to overcome the testimony of those claiming to be subscribing witnesses to the questioned document and to support a finding of forgery and the corrorative evidence may be the most nearly positive and direct evidence which the nature of the case will admit.

*In re Cline's Estate*, 252 A.2d at 660 (citations omitted; format altered).

A claim of forgery presents an issue of fact; as such, the resolution of the issue necessarily turns on the court's assessment of the witnesses' credibility. *In re Estate of Cruciani*, 986 A.2d 853, 855 (Pa. Super. 2009). Because the orphans' court sits as the factfinder, it determines the credibility of the witnesses, and on review, we will not reverse its credibility determinations absent an abuse of discretion. *Id.*

Here, Ronald relies on paragraph (c) from *Cline's Estate* to argue that the orphans' court should have disregarded the opinion of Petitioners' handwriting expert. Ronald's brief on this issue consists largely of reasons why this court should believe the testimony of him and Charles over that of Sharon and handwriting expert, Khody Detwiler. Ronald's Brief at 13-18. His argument fails.

On issues of credibility, it is not our role as an appellate court to reweigh the evidence and substitute our judgment for the factfinder, who saw the witnesses firsthand. *Commonwealth v. Miller*, 172 A.3d 632, 640 (Pa. Super. 2017). The orphans' court noted that Ronald and Sharon testified "opposite" concerning their mother's health, and the court documented some of the major discrepancies in its findings and opinion. O.C.O. at 5-6. Only Ronald testified about his alleged drafting and Dorothy's signing of the will; unlike other cases, there were no subscribing witnesses to the event. Ultimately, based on its decision, the orphans' court did not find Ronald to be

credible.[4]  As such, the legal principle in paragraph (c) from ***Cline's Estate***

does not apply.

_____

[4]  The orphans' court noted that in assessing credibility of the witnesses, it considered all the believability factors listed in Standard Civil Jury Instruction 4.20.  That section provides:

> As judges of the facts, you decide the believability of the witnesses' testimony. This means that you decide the truthfulness and accuracy of each witness's testimony and whether to believe all, or part, or none of each witness's testimony.
> The following are some of the factors that you may and should consider when determining the believability of the witnesses and their testimony:
> a. How well could each witness see, hear, or know the things about which he or she testified?
> b. How well could each witness remember and describe those things?
> c. Was the ability of the witness to see, hear, know, remember, or describe those things affected by age or any physical, mental, or intellectual disability?
> d. Did the witness testify in a convincing manner? How did the witness look, act, and speak while testifying?
> e. Was the witness's testimony uncertain, confused, self-contradictory, or presented in an evasive manner?
> f. Did the witness have any interest in the outcome of this case, or any bias, or any prejudice, or any other motive that might have affected his or her testimony?
> g. Was a witness's testimony contradicted or supported by other witnesses' testimony or other evidence?
> h. Does the testimony make sense?
> i. If you believe some part of the testimony of a witness to be inaccurate, consider whether that inaccuracy cast doubt upon the rest of that same witness's testimony. You should consider whether the inaccuracy is in an important matter or a minor detail. You should also consider any possible explanation for the inaccuracy. Did the witness make an honest mistake or simply forget, or was there a deliberate attempt to present false testimony?

*(Footnote Continued Next Page)*

With no credible testimony of fact witnesses regarding execution of the purported will, the orphans' court was free to consider the expert testimony and give that testimony whatever weight it deemed appropriate. "A trial judge passing upon issues dependent [on] expert opinion testimony is free to accept one expert witness's opinion over that of a conflicting opinion so long as there is adequate record support." ***Commonwealth v. Flor***, 259 A.3d 891, 911 (Pa. 2021) (quoting ***Commonwealth v. Banks***, 29 A.3d 1129, 1135 (Pa. 2011)).

The orphans' court chose to believe Mr. Detwiler over Ms. Dresbold. The court was persuaded by Mr. Detwiler's extensive education and experience. O.C.O. at 7. We discern no abuse of discretion in this regard. The findings of fact by the orphans' court are supported by the record; clear and convincing evidence was presented to prove that the document purported to be the decedent's will was a forgery. ***See Estate of Cruciani***, 986 A.2d at 860.

---

j. If you decide that a witness intentionally lied about a significant fact that may affect the outcome of the case, you may, for that reason alone, choose to disbelieve the rest of that witness's testimony. But, you are not required to do so.

k. As you decide the believability of each witness's testimony, you will at the same time decide the believability of other witnesses and other evidence in the case.

l. If there is a conflict in the testimony, you must decide which, if any, testimony you believe is true.

As the only judges of believability and facts in this case, you, the jurors, are responsible to give the testimony of every witness, and all the other evidence, whatever weight you think it is entitled to receive.

4.20 (Civ) Believability of Witnesses Generally, Pa. SSJI (Civ), §4.20 (2020).

Likewise, Ronald fails to convince us that the court capriciously disbelieved his testimony, which he claims was "uncontradicted." Our courts have long recognized that even uncontradicted testimony need not be accepted as true. *Aaron v. Strausser*, 59 A.2d 910, 912 (Pa. 1948) ("Evidence which is uncontradicted is not necessarily to be accepted as true. Although direct evidence contradicting the testimony of witnesses may be lacking, the [factfinder is] not bound to accept it as true where it contains inherent improbabilities which, alone or in connection with other circumstances in evidence, furnish a reasonable ground for concluding that the testimony is not true."); *Elza v. Chovan*, 144 A.2d 436, 438 (Pa. Super. 1958), *affirmed*, 152 A.2d 238 (Pa. 1959) (The trier of fact "is not required to believe everything that a litigant or his witnesses say, even though their testimony is uncontradicted.").

Although Ronald claims that he witnessed Dorothy sign the purported will on January 5, 2022, the orphans' court was free to disregard that testimony if it did not believe it to be true. Again, we discern no abuse of discretion. Ronald's first two appellate issues warrant no relief.

In his third issue, Ronald claims the orphans' court committed an error of law by denying the introduction of evidence of the Decedent's testamentary intent. Ronald relies on *In re Moore's Estate*, 277 A.2d 825, 826 (Pa. 1971) to support his contention that such evidence was admissible in this case. Ronald's Brief at 21. In *Moore's Estate*, our Supreme Court held "extrinsic evidence of testamentary intent is inadmissible where a writing is clearly a

will; it is only where there is a real doubt or real ambiguity as to the character of the writing and the intent of the decedent as expressed therein, that extrinsic evidence will be admissible to show the intent of the decedent." *Id.*

Ronald's reliance on *Moore's Estate* is misplaced. Here, the document was clearly a will; the content of the will and the intent of the decedent were not at issue. The decedent's intent was not relevant to the dispute. The only issue was whether the signature on the document was that of Dorothy Grigg; without a valid signature, the document was not a valid will. Here, the court found the signature was a forgery, so there was no valid will. As such, the court did not err or abuse its discretion in refusing to allow extrinsic evidence of the decedent's intent.

In his final issue, Ronald challenges the procedure the orphans' court followed in scheduling a hearing on the initial petition for letters of administration and the objections, requesting the issuance of letters testamentary. He claims the Petitioners did not file a caveat or bond within ten days of his request to probate the will, in accordance with Pennsylvania statute 20 Pa.C.S.A. § 906. As such, he claims the orphans' court usurped the function of the Register of Wills by holding a hearing. He requests that the decision be reversed and remanded with instructions to the Register of Wills to probate the will. Ronald's Brief at 22-24.

Ronald's procedural challenge is meritless. This case involved more than a petition for letters testamentary pursuant to a will. It also involved a petition, requesting letters of administration, with an allegation that the

decedent died intestate. Because a dispute was created by the competing petitions, the Petitioners did not need to file a caveat under Section 906.

The Register of Wills Act allows the case to proceed directly to the orphans' court whenever a dispute arises concerning the probate of a will or the grant of letters. Section 907 of the Act provides, in relevant part:

> Whenever a caveat shall be filed **or a dispute shall arise** before the register concerning the probate of a will, the grant of letters or the performance of any other function by the register, he may certify, or the court upon petition of any party in interest may direct the register at any stage of the proceedings to certify, the entire record to the court, which shall proceed to a determination of the issue in dispute.

20 Pa. C.S.A. § 907 (emphasis added).

We cannot discern from the record, how the order directing a status conference before the orphans' court came to be. Given the nature of the dispute, it appears that the orphans' court directed the case to proceed before it, no one objected, and all parties acted as if the case had been certified under the Register of Wills Act.

Our Supreme Court previously acquiesced to this procedure in a similar case when all parties proceeded directly before the orphans' court without objection, even though the Register of Wills had initial jurisdiction over the matter. **In re Martin's Estate**, 36 A.2d 786 (Pa. 1944). In that case, the court recognized that the petition at issue originally should have been directed to the Register of Wills under the Register of Wills Act. Nonetheless, the court observed, "However, by action of both the court and parties, the matter was

regarded **as if certified** by the Register to the Orphans' Court under [] the Register of Wills Act, [], and we shall so regard it." (emphasis added).[5]

Here, we shall do the same, especially given the unusual and complicated nature of the will contest at issue. **See e.g., In re Milgrom's Estate**, 29 Pa. D. & C.2d 177, 183 (Phil. Co. 1963) (noting that "the circumstances of this case constitute precisely the kind of situation the legislature contemplated when [the section regarding certification to the orphans' court] of the Register of Wills Act of 1951 was enacted; It seems reasonably certain that, regardless of how the register might decide the contest challenging the will of [the decedent,] an appeal would be taken, in which event the entire question would have to be considered *de novo* by the [orphans'] court. It would serve no useful purpose, under the unusual circumstances of this case, to permit this waste of time and expense and needless duplication of effort [to remand to the Register of Wills].")

Although the Register of Wills typically decides the issue in the first instance or certifies the case to the orphans' court, no relief is due. The

_____

[5] Notably, the prior version of the statute at issue, in 1944, did not provide a process for the parties to petition the court to resolve the dispute. Now, the parties have that option; they can choose to have the Register of Wills decide the dispute in the first instance, or they can petition the court to direct the Register to certify the case and the court can resolve the dispute. Here, although it appears the court *sua sponte* took over the dispute (apparently at the informal request of the Register), without prior certification, Ronald and Charles did not object to this procedure.

orphans' court clearly had jurisdiction to decide this will contest.[6]  All parties were afforded an opportunity to present their evidence before the orphans' court of Cambria County.  As our Supreme Court did in ***In re Martin's Estate***, we will treat the matter as if it had been properly certified by the Register of Wills to the orphans' court.  Ronald's procedural challenge warrants no relief.[7]

Order affirmed.

_____

[6] Title 20 of Pennsylvania Statutes covers Probate, Estates and Fiduciaries and mandates the Orphans' Court Division of the Court of Common Pleas to decide matters involving the distribution of decedents' estates, which necessarily includes will contests.  Specifically, the relevant portion of section 711 states:

> **§ 711. Mandatory exercise of jurisdiction through orphans' court division in general**
>
> Except as [otherwise provided in section 712 and section 713], the jurisdiction of the court of common pleas over the following shall be exercised through its orphans' court division:
>
> **(1)  Decedents' estates.  --** The administration and distribution of the real and personal property of decedents' estates and the control of the decedent's burial.

20 Pa.C.S.A. § 711.

[7] We note the relief Ronald requested would be improper even if we remanded. Ronald asked us to direct the Register of Wills to grant him letters testamentary and probate the will.  However, he ignores the fact that the Register of Wills was presented with two competing petitions.  Upon any remand, the Register would have to decide whether to grant either petition, which would give the losing party a right to appeal to the orphans' court for a *de novo* hearing.  Alternatively, the Register could certify the matter to the orphans' court for a decision.  In either event, the same result would have occurred.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 09/16/2024